## Case No. 12,818.

### SHREW et al. v. JONES.

[2 McLean, 78.] [1]

Circuit Court, D. Indiana. May Term, 1840.

JUDGMENT—LIEN ON LANDS—INDIANA STATUTE—CIRCUIT COURT.

1. At common law a judgment created no lien on the real estate of the defendant. But as his land was made liable to satisfy the judgment, under the elegit, this created a lien.

[Cited in Morsell v. First Nat. Bank, 91 U. S. 360; Re Boyd, Case No. 1,746; Cooke v. Avery, 147 U. S. 389, 13 Sup. Ct. 346.]

2. There was a judgment lien on the lands of the defendant, in Indiana, before there was any express statutory provision on the subject. This was *held* to be the effect of several statutes, which subjected lands to execution and sale under a judgment.

3. By the act of 1818 a lien was given from the rendition of the judgment. And this lien extended throughout the state.

4. The act of 1824 limits the liens of the judgments of the circuit courts of Indiana, to the counties in which the judgments were entered.

[Cited in Lombard v. Bayard, Case No. 8,469.]
[Cited in Harrison v. McHenry, 9 Ga. 164.]

5. This statute imposed no restrictions on the liens of the judgments entered in the supreme court of the state.

6. The act of 1831 limits, also, the judgments of the supreme court to the counties in which they shall be entered. But this law being passed subsequently to the act of congress of 1828 [4 Stat. 278], which adopts the execution laws of the states, &c., can have no effect on the judgments of the federal courts.

7. The jurisdiction of the circuit court of the United States is coextensive with the limits of the state of Indiana, and, consequently, the liens of its judgments extend throughout the state.

[Cited in Cropsey v. Crandall, Case No. 3,418; Lombard v. Bayard, Id. 8,469; Ludlow v. Clinton, Id. 8,600; Dartmouth Sav. Bank v. Bates, 44 Fed. 548.]

[Cited in Lawrence v. Belger, 31 Ohio St. 178; Sellers v. Corwin, 5 Ohio, 407.]

8. Prior to the act of 1831, the lien of the judgments of the supreme court of Indiana was coextensive with its jurisdiction, which extended to the limits of the state.

9. The land of a defendant in a judgment of this court, may be sold on execution, notwithstanding a judgment may be subsequently obtained in the state court, under which a levy was first made on the land.

[This was an action of ejectment by Shrew and Winston against I. D. Jones to recover possession of a certain lot.]

Fletcher & Butler, for plaintiffs.

Wright & Patterson and Chase & Lockwood, for defendant.

OPINION OF THE COURT. The title to the lot for which this action of ejectment was brought is under a judgment of this court, obtained the 5th December, 1837, by Shrew and Winston against David Miller and others. The fee of the lot was vested in Candler, one of the defendants. The first of

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

January, 1838, an execution was duly issued upon said judgment and delivered to the marshal to be executed. This writ was returned, replevied, with a replevy bond duly executed. Afterwards, the 17th December, 1838, another execution was duly issued, which was levied by the marshal upon lot one hundred and forty two, in the town of Logansport, as the property of Candler. This lot was sold by the marshal on due notice being given, to the lessor of the plaintiff, for the sum of five hundred and fifty, dollars, which was paid, and a deed was duly executed by the marshal. No copy of this judgment was ever filed in the clerk's office, under the statute of Indiana. The defendants' title was derived under a judgment against Candler and Sludge, the 26th February, 1838. Execution was issued on this judgment the 19th April, following, which was returned no property found. An alias fi. fa. was issued the 24th September ensuing, and levied on the lot in controversy, which was sold by execution the 10th May, 1839, to Jones, the defendant, who received the sheriff's deed.

The above facts are admitted by the parties, and that the proceedings in both cases were regular. The judgment of this court, under which the lessor of the plaintiff claims, having been first obtained, it is insisted that his right is paramount to that of the defendant. On the part of the defendant it is contended that the judgments of this court create no lien on the real estate of the defendant, beyond the limits of the county in which judgment is entered; and that the judgment before the state court in Cass county, where the lot is situated, being obtained before the levy under the first judgment, it has the prior lien. And this is the only question in the case. As land was not liable to be sold on execution, or extended at common law, it is clear that at common law the judgment created no lien on the land of the defendant. But the argument is not sustainable that a judgment can not operate as a lien on real estate, unless this effect be specially given to it by statutory provision.

The statute of 2 Westm. 13 Edw. I., gave the elegit which subjected real estate to the payment of debts, and this, as a consequence, it has always been held, gave a lien on the lands of the judgment debtor. 3 Salk. 212; 1 Wils. 39; 2 Leigh, 268; 6 Rand. [Va.] 618; [U. S. v. Morrison] 4 Pet. [29 U. S.] 124; Bank of U. S. v. Winston [Case No. 944]; 3 Bl. Comm. 418; 2 Bac. Abr. 731; [Tayloe v. Thomson] 5 Pet. [30 U. S.] 367. The same doctrine was held by the supreme court of this state, in a learned and able opinion, in the case of Ridge v. Prather, 1 Black [66 U. S.] 401. The court say: "We have always had a statute at least as strong as that of Westm. 2, by virtue of which judgments are liens upon real estate." But until the act of 1818, there was no statute declaring that judgments should be a lien on real

estate. In the view of the court such lien arose from the various acts subjecting lands to execution.

The thirteenth section of the act of 1818, entitled "An act to prevent frauds and perjuries," gives a lien on the real estate of the defendant from the time of signing the judgment. This statute, it would seem, was introductive of no new principle, but gave effect, from a specified time, to a judgment lien. It is unnecessary to inquire whether, prior to this time, the lien took effect from the commencement of the term, or not; it is enough to know that it existed. The lien, under this statute, as well as that which existed before the statute, being general, must have extended throughout the state. The circuit courts had power to issue executions to any county in the state. And as their jurisdiction, thus to enforce their judgments, extended throughout the state, the lien must have been coextensive with their jurisdiction. This act was modified by an act subjecting real and personal estates to execution, approved 30th January, 1824. The thirteenth section of this act provides, that judgments in the circuit courts are hereby made liens on the real estate of the defendant, or defendants, from the day of the rendition thereof, in the county where such judgments may be rendered. And, on recording a copy of the record of such judgments in the clerk's office of any other county, the same operates as a lien within such county. This act is restrictive of the lien of a judgment of the circuit court, but it could have had no such effect on a judgment entered by the supreme court of the state. This point is not known to have been decided by the supreme court of the state, but it is one which would seem to admit of little or no doubt. If, before the passage of this act, the liens of the judgments of the supreme and circuit courts extended throughout the state, which, it is presumed, no one will controvert, it is clear that the restriction of the lien on the judgments of the circuit court, could impose no restriction on the judgments of the supreme court. If any thing were wanted to make this view conclusive, it is found in the act of 1831. The twenty second section of this act, which was enacted to prevent frauds and perjuries, &c., provides that judgments in the circuit and supreme courts of this state, shall have the operation of, and be, liens &c., in the county within which such judgments may be rendered. This act has never received a construction by the supreme court of the state, nor is it important now to inquire whether the effect of it must be to limit the lien of the judgments of the supreme court to the county of Marion, in which, only, its sessions are held. It is enough to know that the object of the act was, in some degree, to restrict the liens of the judgments of that court; and that such restriction was not imposed by the act of 1824. It is true that in the act of 1831 the circuit court is named with the supreme court, but this was necessary, as the latter act changed somewhat the duty of the clerk who records the transcript. The ground may then be assumed, that, up to the year 1831, the original judgments of the supreme court created a lien throughout the state.

By the act of congress of the 19th May, 1828, it is provided, "that writs of execution, and other final process issued on judgments and decrees, rendered in any of the courts of the United States, and the proceedings thereupon, shall be the same, except their style, in each state, respectively, as are now, and in the courts of such state." This act places the states that have been admitted into the Union since the judiciary act of 1789 [1 Stat. 73] was passed, in regard to the proceedings of the courts of the United States, in all respects, with the exception of Louisiana, on the same footing. As this fact has often been stated by the supreme court, it is unnecessary to examine it. The act of 1828 adopts the laws of Indiana which existed at the time of its passage, and not those which have been subsequently enacted on the same subject. Congress have not adopted the laws of any state, in regard to the practice of the courts of the United States, prospectively. The law of Indiana, in 1828, in regard to judgments and executions in the supreme court, is the law by which the present question must be decided.

In the case of Taylor v. Thompson. 5 Pet. [30 U. S.] 367, the court say: "The first point made by the plaintiff in error is, that, by the law of Maryland, which, it is admitted, is the rule by which this point is to be determined, a judgment is no lien on real estate before execution was issued and levied." And in the case of Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 453, the court say, the judgments in the federal courts, within the district of New York, are liens upon real property in like manner as judgments of the state courts, and to the extent of the local jurisdiction of the court. And, so in every other state, the judgments of the federal courts have the same lien, to the extent of its jurisdiction, as the judgments of the highest court of the state. The act of 1828 declares that the rules of proceeding, &c., shall be the same in the circuit courts of the United States as in the highest court of original and general jurisdiction of the state. The supreme court of Indiana is the highest court of the state, and its jurisdiction is coextensive with the state. Prior to the act of 1831, a judgment of that court constituted a lien throughout the state, and as the jurisdiction of the circuit court of the United States is also coextensive with the limits of the state, its judgments must create a lien to the same extent.

If, as contended, the liens of the judgments of this court be limited to the county

in which they are rendered, as in the inferior courts of the state, the judgments of this court have, in effect, no lien. The law of the state, which extends the lien of a judgment of the circuit court of the state to any county within which the record of such judgment shall be recorded, can have no application to this court. We have no right, under it, to require our judgments to be recorded by any clerk of the state court.

The law of Indiana, regulating judgments and executions, as it stood in 1828, is the law of congress, by adoption. Effect must be given to the provisions of this law, so far, at least, as they are adapted to the organization and powers of this court. If the rules of proceeding by the circuit courts of the state be followed by this court, effect is given to them without reference to the limited jurisdiction of these courts. The limits of the state, in the exercise of the jurisdiction of this court, is as the limits of a county to the local court. The modes of judicial proceedings and rules of property are different in the different states; and, in adopting those rules, congress designed, as far as practicable, to give the same effect to them in the courts of the Union as in the courts of the state. No other course of legislation could have been so well calculated to produce a harmonious action in the judicial departments of both governments. But if a state law, being framed in reference to the limited jurisdiction of the state courts, for this reason can not constitute a rule for the federal courts, the legislation of congress, on the subject, has been in vain. Such has not been the view taken by the courts of the United States. The law of the state regulates the proceedings of a sheriff on execution. He is to advertise the property, real or personal, &c., but his duties are all limited to the county. The same rule governs the marshal, and operates throughout the state. The principles of the state law are adopted, but the instruments which give effect to those principles are necessarily different, and they are made to operate throughout a more extended jurisdiction.

But as it regards the main, and, indeed, the only question in this case, we have no need to resort to this course of induction. As has been stated, the judgment of the supreme court of this state, in 1828, operated as a lien on the real estate of the judgment debtor throughout the state, and this is conclusive of the question. The same effect is given to the judgments of this court. In the case of Lessee of Sellers v. Corwin, 5 Ohio, 398, the supreme court, in a very elaborately considered case, decided that, under a law of that state giving judgment liens an effect the same as in this state, the judgment of the circuit court of the United States constituted a lien to the extent of its jurisdiction. No supposed inconvenience which arises under the laws of

1828, in regard to judgment liens, and which have been remedied by the act of 1831, can operate against this construction. In most of the states, it is believed, the judgments of the circuit court of the United States operate as a lien to the extent of its jurisdiction. If it shall be deemed important to have the records of the judgments of this court recorded in the county where the lands of the defendant are situated, it may be required by act of congress, or by a rule of this court, if the law of the state shall require the clerks to make such record.