## Case No. 3,418.

### CROPSEY v. CRANDALL.

[2 Blatchf. 341;[1] 10 N. Y. Leg. Obs. 1.]

Circuit Court, S. D. New York.   Oct. 15, 1851.

#### LIEN OF JUDGMENT.

1. A judgment or decree docketed in a court of the United States for the southern district of New York is a lien on the lands of the defendant in whatever county of the district they are situated.

2. It is not necessary to the creation of such a lien that a transcript of the judgment or decree should be filed in the office of the clerk of any county in the district.

3. The statutes of New York which limit the duration of the lien of the judgments and decrees of the state courts apply to the judgments and decrees of the courts of the United States within the state.   But the New-York statute of May 14, 1840 (Laws 1840, c. 386, § 26), prescribing what acts are necessary to be done to create the lien of a state judgment or decree, does not apply to the judgments or decrees of a court of the United States.

The libellant [Elias Cropsey] obtained a decree in this court, on appeal from the district court, in a suit in personam, in admiralty, against the respondent [Joshua Crandall] and one [Charles] Cleaveland, his stipulator. The decree was duly docketed in this court, and an execution was issued upon it against Cleaveland, on which real estate of his, situated in Williamsburgh, Kings county, was about to be sold. The decree was not docketed in Kings county, nor was any transcript of it filed in that county. Cleaveland now moved to set aside the execution against him, or the ground that, under the 26th section of the act of the legislature of New-York of May 14, 1840 (Laws 1840, c. 386), no lien could attach to his real estate in Kings county until a transcript of the decree was filed in the office of the clerk of that county.

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

Before NELSON, Circuit Justice, and BETTS, District Judge.

THE COURT held that a judgment or decree docketed in a court of the United States for the southern district of New-York was a lien upon the lands of the defendant in whatever county in the district they might be situated; that it was not necessary to the creation of such lien that a transcript of the judgment or decree should be filed in the office of the clerk of any county in the district; that the statutes of New-York which limited the duration of the lien of the judgments and decrees of the state courts applied to the judgments and decrees of the courts of the United States within the state; but that the New-York statute of May 14th, 1840, prescribing what acts were necessary to be done to create the lien of a state judgment or decree, did not apply to the judgments or decrees of a court of the United States.

Motion denied.

[NOTE.  The following opinion is published from 19 Betts, D. C. MS. 112:

[October 14.

[BETTS, District Judge.   An action in personam was instituted by the libellant against the respondent on the 17th of October, 1849.   After a default against the respondent and various intermediary proceedings, he put in an answer, and on the 4th of November, 1850, filed a stipulation entered into by Charles Cleaveland to pay the money awarded by the final decree rendered in this court or in any appellate court.   The cause was heard in court and a decree rendered for the libellant for the sum of $421.75, on the 28th day of December thereafter, and execution therefor issued against him Jany. 31, 1851.   On the 4th of February an order was entered for the stipulator to show cause why he should not perform his stipulation, and the 15th day of the same month a decree was rendered against him upon the stipulation, that he pay and satisfy the said sum of $226.17 the amount of the decree unpaid and which decree was then docketed by the clerk in the docket book of judgments of the court.   On the 29th of April execution was issued on the last mentioned decree against the said stipulator and delivered to the marshal, who levied it on certain real estate situated in Williamsburgh, Kings county, and advertised the property for sale on the 7th day of October instant.

[On an affidavit by the stipulator, that no notice of the advertisement had been publicly affixed at Williamsburgh, and that the decree had not been docketed in the clerk's office of Kings county and that a large amount of real estate consisting of numerous distinct parcels and lots, were advertised by the marshal for sale, this court ordered a stay of proceedings on the execution to enable the

stipulator to move to quash the execution or for other relief.

[On the hearing of the motion the libellant proved that notices of such sale had been duly affixed in three of the most public places in Williamsburgh to the knowledge of the stipulator and that he had applied at the marshal's office for a short stay of sale, promising if it was adjourned one week he would in the mean time pay the debt, interest and costs. It was stated on argument and not denied that the reason so many parcels of land were levied on was that the property was largely encumbered and it was impossible to obtain bids on any particular lots, sufficient to satisfy the decree. The equities of the motion being thus met and repelled, the right of the stipulator to relief rests solely upon the question of law raised, whether the judgment or decree of this court, binds real estate in Kings county, without the judgment is also docketed in the clerk's office of that county.

[The argument for the defendant is that the act of congress July 4, 1840 [5 Stat. 393], adopts the law, of the state of New York then in force, and renders the same proceedings necessary in the United States courts, as in the state tribunals to obtain a lien by judgment on real estate. The language of the act is this "judgment and decrees hereafter rendered in the circuit and district courts of the United States within any state, shall cease to be liens on real estate or chattels real in the same manner and at like periods as judgments and decrees of the courts of such state, now cease by law to be liens thereon." The section then repeals the 8th, 9th and 10th sections of the act of the preceding session, March 3, 1839. The provisions of those repealed sections will indicate what particular purpose and object congress had in mind and intended to effect in the passage of the act of 1840.

[The 10th section limited the duration of judgment liens, but was so framed as to work gross inequalities between judgment creditors, for under it a judgment rendered the 2d of March held its lien but five years, whilst one given two days after, would retain it ten years, and besides retroacted without notice, upon the rights of judgment creditors already acquired cutting them off from the remedy the law had given them on a judgment duly recorded. 5 Stat. 338. It was palpable that private suitors and the United States themselves might be great sufferers under the act, for on the records of the federal courts in this state, there remained at that day unsatisfied judgments in favor of the United States to an amount of millions of dollars. It was furthermore manifest that the legislation was aimed solely at this state and had been promoted either by the influence of local officers here, or practitioners in the state courts, to be benefitted by it. Congress had every motive and interest opposed to partial legislation of that character, and

at the first session after that enactment repudiated all three provisions and adopted regulations which should be common to all the states. The bill was reported to the senate by the judiciary committee April 18, and was passed without amendment and sent to the house April 29. Senate Jour. 1840, pp. 323, 344. It was reported to the house by their judiciary committee without amendment June 19, and was read and passed June 20 (House Jour. 1840, pp. 1134, 1135) and approved July 4, 1840.

[It is plain upon this law as also on that of 1839 that congress acted upon the assumption that judgments and decrees of the United States courts are liens on real estate, and meant only to provide the compensation clerks of courts should receive for searches therefor, and to fix the time when such liens should terminate and cease. In both these particulars it referred to the existing laws of the state; and by the act in force when this law passed the senate, the judgment ceased to bind lands after ten years as against bona fide purchasers. 2 Rev. St. p. 350, § 3. After the above act had passed the senate, and whilst it lay unacted upon in the house, the legislature of New York, May 14, 1840, passed an act "concerning costs and fees in courts of law and for other purposes," the 25th section of which, it is contended, is adopted by the act of congress, and governs the present case. That section is as follows: "No judgment or decree which shall be entered after this act takes effect, shall be a lien upon real estate, unless the same shall be docketted in books to be provided and kept for that purpose by the county clerk of the county where the lands are situated." And by the last section, it was declared the act should take effect the first day of June next. Sess. Laws N. Y. 1840, cc. 334, 336, 383.

[This act did not alter the existing law of New York respecting the running out or terminating of judgments liens; they remain as before extinguishable by payment, or presumption of payment (2 Rev. St. p. 301, §§ 46, 47), or the lapse of ten years after they were docketted (4 Kent, Comm. 435; 2 Rev. St. 359, § 4). It in effect merely took away the privilege granted by previous laws for executions to be issued to sheriffs of different counties on judgments or decrees of the highest courts, in all cases, and limited the power to sell real estate, to executions on judgments thereafter docketted in the county where the land lay. Liens by judgment or decree are made local and territorial and must be recorded or registered in the county in which the real estate is situated. The jurisdictions of the supreme court and county courts are placed on the same footing in this respect. But this is no regulation of the manner or period in which existing liens shall cease. It declares when only they shall come into being and effect. The Revised Statutes had fixed the period when judgment liens should cease. No execution could be issued upon

them after two years, unless revived by scire facias, and after the lapse of 10 years they cease to be liens against bona fide purchasers (2 Rev. St. p. 359, § 4), and after 20 years they will be presumed satisfied and paid (Id. p. 228, §§ 46, 47; Id. § 1).

[It is not to be supposed congress would make the validity of judgments and decrees in the United States courts dependent upon the acts of county clerks or other local officers of the states over whom it could have no control. Shrew v. Jones [Case No. 12,818]. Upon the hypotheses of the argument for the defendant, the judgment of the federal court, although operating throughout the district (Sellers v. Corwin, 5 Ohio, 398), yet affords creditors no remedy for their debts, against the real estate of debtors situated within the district without the concurrence and co-operation of a state clerk in each county within the respective United States districts. It would require a very plain expression of the intention of congress so to trammel the action of its own courts, and the remedies therein, before the appropriate remedy could be denied them, upon the terms or operations of the state law alone. If the law now requires a judgment of the United States courts to be registered to bind real estate there, it also requires the same act to be done in the county clerk's office in the city of New York, and in effect abrogates the duties of its own officers and transfers them to a county officer of the state, who may perform the service or not at his option. The improbability that any such intendments could have entered into the enactment of the act of 1840, supplies a strong reason against that interpretation of it. The language of the act is fully satisfied by holding that it applies not to the manner of creating liens, but exclusively to the mode and time of terminating them, and through which parties affected by them can become freed from their lien. So far as the meaning of congress as to the description of state laws which were to be adopted by this statute, can be inferred from the existing condition of the United States law in respect to the state of New York, the act of 1840 most palpably had reference to the statutes for a long time in force here, and not to one, only passed in this state twenty days previously, and in which the provision in question seemed to be thrown in casually in a very short section, the act being a long one and by its title seemingly devoted to other objects.

[Laws have been passed by the state legislature in 1830 (2 Rev. St., 1st Ed., p. 557, §§ 41–43), and in 1832 (Sess. Laws, c. 210, § 2), to have transcripts of judgments docketted in the United States courts in this state, obtained by the clerks of the supreme court of the state and made part of their dockets, to be kept and examined the same as state judgments.

[The state having no authority to enforce the execution of the law, it is not probable, that the act of congress of 1839, was passed in part with a view to aid that object. Section 8 directs the clerk of the United States courts in the city of New York, to transmit certified copies of his judgment dockets to the clerk of the state supreme court in the city of New York. 5 Laws U. S. 338. This act must at all events be taken as expressing the extent to which congress was willing to go at that time in making the dockets of judgments in the United States courts in this state, conform to and become part of the state dockets, and as has been before shown, after the experiment of one year, congress withdrew even this concession and repealed the provision absolutely substituting nothing of like character in its place. This would denote an intention to leave the matter of docketting judgments and searches in respect to them, wholly to their own officers, without any reference to the method of keeping or publishing such dockets by the state officers. The jurisdiction of tne United States courts is territorial over districts and has no regard to the local subdivisions within the states of counties, cities, towns or parishes. 2 McLean, 78, 84 [Shrew v. Jones, Case No. 12,818]; [Massingill v. Downs] 7 How. (48 U. S.) 760; 1 Wall. Jr. 202 [Lombard v. Bayard, Case No. 8,469].

[Its processes run throughout the district, and its offices to serve mesne and final processes, act ministerially in aid of the courts, have authority co-extensive with the district, and the district composes in effect but one county. But with respect to the supreme court of this state, it only acts through ministerial officers appointed for the particular county, where its process is to be executed, and there would be great fitness and unity, (in addition to the matters of conveniency to parties affected by judgments) in requiring evidence of the existence of a judgment to be registered in the county whose sheriff is to enforce it against real property: and those local officers being all alike subject to the state law, it is as easy to require the services of county clerks to keep the dockets of a supreme court clerk as to allot the duty to him alone. This is wholly different with the United States. A direct enactment by congress that the county clerks within the state of New York shall docket judgments rendered in the federal courts within the state would be nugatory, and an indirect requirement, by rendering it necessary to a judgment creditor to have it done, would in parity of reason be equally inefficacious and void.

[But as already intimated the state act of May, 1840, has relation only to the manner in which liens on land shall thereafter be created or acquired. It is not enough now under the state law to enter a judgment in the supreme court to render it a lien throughout the state, but the statute directs something more to be done before such lien is brought into existence. Its words are, "no

judgment or decree which shall be entered after this act takes effect, shall be a lien upon real estate, unless," &c. The registry within the county where the land lies, is thus made a condition to any lien coming into being. It is not the language or purpose of the act of congress to provide for creating or constituting liens, by judgments or decrees in the manner done under the state law; that method was already established by its own laws and procedure ([Conard v. Atlantic Ins. Co.] 1 Pet. [26 U. S.] 453; 1 Kent, Comm. p. 248, note 6), and the plain bearing, as well as legal construction of the statute limits its operation to the manner and period in which existing liens shall cease to be such. Three methods, manner or periods of terminating them under the state are above shown to be in force, and those provisions only of the state law, this act of congress has adopted.

[The process act requires that writs of execution and other final process issued in judgments and decrees, rendered in any of the courts of the United States and the proceedings thereupon shall be the same as used in the states respecting where the act passed. May 14, 1828; 4 Laws U. S. 281, § 3. This statute has no relation to the point in controversy in this case, because the filing or entry of transcripts in a particular county, is no way connected with the proceeding to be had in executing final process on the judgment. The latter is ministerial wholly, the other relates to the creation of the judgment or its encumbrance on the property sought to be sold. The case of Massingill v. Downs, 7 How. [48 U. S.] 760, before cited, is strong and direct to the point that the judgment of the United States court creates a lien in this state co-extensive with the district, not to be divested or varied by subsequent legislation of the state; and as the right to this lien was anterior to the state act of 1840, and in no way derived from or strengthened by that act, its provisions cannot operate to divest the right, any more than an express legislative enactment now passed would prevent judgments and decrees of the United States courts becoming liens on real estate within the state.

[The precise point in controversy on this motion would appear to have arisen and been decided in the circuit court for the eastern district of Pennsylvania in 1848, after the act of congress of 1840 went into operation. The court do not notice that act in its decision as in any way affecting the question. It must have had a most important bearing on the point, if the position taken for the defence is sound, because a statute of Pennsylvania limiting liens of judgments to the counties in which they are rendered was in force at the enactment of the act of congress and had been since 1799. The decision of the court was that the judgment in the United States court was a lien throughout the eastern district of Pennsylvania and was not limited to the county in which it was rendered or recorded. Lombard v. Bayard [Case No. 8,469]; 7 Pa. Law J. 250.

[The limitation of a lien by the state law rests on different principles, and will govern its directions in the United States courts equally as in state courts. 1 Baldw. 273, 274 [Thompson v. Phillips, Case No. 13,974].

[I am clearly of opinion that the lien in the present case extended to the lands of the defendant in Kings county on docketting the same in this court, and that the motion to set aside the execution must be denied with costs.]