McIlvaine, J.
To show error in the judgment below, two points are made and relied on by plaintiffs in error:
1. That the judgment of the defendant in error never was a lien on ¿the interest of Conrad Beymer in these lands; at most, not until the lien of plaintiffs’ mortgage had attached.
2. If such lien existed, either by force of the judgment *178 or the levy under it, the lien became and was dormant at the commencement of the-proceedings in partition.
If neither of these points can be maintained, it is conceded the judgment was right.
In support of the first proposition, it is contended that a judgment lien can exist only by force of statutory., provisions ; and that there is no statute creating a lien in favor of a judgment rendered by the Circuit Court of the United States.
The general doctrine contended for has been repeatedly announced by this court, and by the federal courts; and it is also true that there is no express statutory provision creating a lien in favor of judgments rendered by the federal courts.
It has, however, been held by this court, in a well considered ease, Sellers v. Corwin, 5 Ohio, 398, that judgments rendered by the United States Circuit Court for the district ■of Ohio, have a lien upon the lands of the debtor, within the district. The doctrine of this case is, that inasmuch as the'execution laws of the state have been adopted under and by virtue of the federal statute for the enforcement of 'the judgments of federal courts within the state, that the same lien declared by the statute of the state in favor, of the judgments of state courts attaches to the judgments of federal courts, on lands within the district. And this doctrine is analogous .to that of the English courts, which hold that á lien is created in favor of a judgment, by virtue of the statute, which* authorizes a moiety of the debtor’s land, by a writ of elegit, to be delivered to the creditor, until his claim is satisfied out of the rents and profits.
We see no good reason for doubting the correctness of the decision, in Sellers v. Corwin, especially as the same •doctrine has been held in several cases decided by the courts of the United States, as well also as by those of several of our sister states. Shrew v. Jones, 2 McLean, 78; Massingell v. Downs, 7 Howard, 760; Williams v. Benedict, 8 Howard, 107; Cropsey v. Crandall, 2 Blackf. 430; Brown v. Pierce, 7 Wallace, 205.
*179 It is also contended, that the interest of Conrad Beymer in the estate devised, during the continuance of the preceding particular estate, was not embraced within the meaning of “lands and tenements,” as used in section 421 of the code, which declares the lien of a judgment as follows: “The Linds and tenements of the debtor . . . shall be bound for the satisfaction thereof,” etc.; or, in other words, that a vested remainder in lands is not the subject of a judgment lien uuder our statute.
The exact point is, that actual possession, or the right to immediate possession, in the debtor, is essential to the existence of a judgment lieu ; and, by way of argument, it is claimed that no provision is made, in our execution laws, for the appraisement of such interest, which appraisement must take place before a sale can be made.
If it were settled that an estate in remainder can not be sold under the legal process of execution, because of a lack of authority to make the necessary appraisement of such an interest, it would not necessarily follow that a judgment does not operate as a lien thereon; for, notwithstanding, the lien might exist until the precedent estate would fall out, when the appraisement and sale could take place without any conceivable objection ; or, previous to the falling out of the particular estate, possibly, resort might be had to a court of equity for relief. It has been held, however, in Canby v. Porter, 12 Ohio, 79, that a life estate may be appraised, and sold in execution. “ Its value,” say the court, “ is the complement of the value of the fee, after deducting the value of the remainder, the elements of com-puting which are entirely within reach of the appraisers.” The same might be said with equal propriety of the value of the remainder, if it were the subject of the sale. But I will not pursue this inquiry, as we are satisfied the question, whether or not a vested remainder may be appraised and sold on execution at law, does not determine the main proposition, namely, whether or not such estate is subject^ under our statute, to the lien of a judgment.
The words, “lands and tenements of the debtor” are of *180 very broad signification ; and while we admit that they do not embrace mere equities in lands or tenements, it is difficult to perceive why they should not include remainders vested under legal titles as well as legal estates in laud and tenements in possession of the debtor.
It will be observed, that the estates made subject to judgment liens are not described in the statute by any word indicating that there must be seizin in the debtor. It is claimed, however, that such is the legal effect of the words used. If this claim were granted, what would be the effect of the statute.
The origin of judgment liens is found in the English statute of Westminister the second, which authorized the judgment creditor to sue out a writ of elegit—the command of which was that the officer deliver to the plaintiff' a moiety of all the lands and tenements, whereof the debtor at the time of obtaining the judgment was seized or at any time thereafter, etc. Now under this statute it was held that the judgment was a lien upon the debtor’s lands and tenements in consequence of the right to take out an elegit, and that the lien continued as long as the right existed; and it was further held that remainders and reversions were subject to the judgment lien as well as estates in actual possession ; and that too, whether the remainder or reversion fell in during the life time of the debtor or after his death. And if judgment were not taken on a bond of the remainder-man or reversioner, binding his heirs, during the life time of the debtor, it might be taken against the heir, and the form of the judgment in such case was, that the plaintiff recover his debt and damages of the aforesaid reversion, to be levied when it shall fall in. Dyer, 373; Carthon, 129; 1 Lord Raymond, 53; Chitty on Descents, 336.
In Gilbert on Executions, 38 and 39, it is said, that the judgment binds not only the lands and tenements of which the defendant is actually seized, but also reversions on leases for lives, as well as for years; for although the words of the elegit are, that without delay yon cause to be delivered a moiety of all the lands and tenements of which the *181 aforesaicl-was seized, etc., yet the intent of the writ extends to whatever lands and tenements were actually vested in the defendant; because the statute is, that a moiety of the land, which extends to reversions, which are comprised under the name lands, since they are lands returning, etc. So in Comyn’s Digest, title Grant, E. 2, it is said, that by a grant of lands and tenements a reversion passes; and in title Estate, B. 12, it is said, if a man grant the land itself, the reversion passes.
The same would certainly be true of a vested remainder.
In 2 William’s Saun. 53 and 54, the author says, we must here remember that the expressions or terms of seizin in law and seizin in deed, refer only to the present corporeal possession of the premises; and not to the fixture of an interest which is to come into actual enjoyment in some future event; and here the word “ seizin ” is used in its strict sense; and though we frequently use the term “ seizin ” of a remainder or reversion expectant upon a free hold, yet this signifies no more than that the property is fixed in the owner, and that such owner is placed in the tenancy. The particular estates and those expectant upon them, form in law only one estate, and the delivery of possession to the person taking first extends to all. All may therefore be said to be seized, all being placed in the tenancy, aud the property being thus fixed in all. It is upon these principles that the authorities lay down the doctrine, that a judgment binds a reversion after an estate for life. Benton v. Smith, 13 Peters, 464.
It can not be doubted, that under our laws an estate in remainder or reversion would descend, as lands and tenements, to the heir, and that the heir would take subject to the debts of his ancestor ; it would therefore seem reasonable, that the same estate, as lands and tenements, should be subject to the lien of a judgment rendered against the debtor in his life-time.
We are, therefore, of opinion that “lands and tenements of the debtor” include an estate in remainder vested under *182 a-legal title, within the meaning of section 421 of the code. Richardson v. McDaniels, 2 Nott & McCord, 35.
The remaining question is, Did the judgment lien of defendant in error become dormant and lose its lien, previous to the commencement of the original action ?
Erom the views we have expressed as to thé mode in which the lien of a judgment of a federal court is created, it follows, that its existence or continuance is subject to the same conditions as in the lien of a judgment rendered by a state court.
Section 422 of the code provides: “ If execution shall not-be sued out within-five years from the date of the judgment ... or if five years shall have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor.”
The last execution on this judgment was issued in August, 1868, and the original 'action was commenced in April, 1874—a period of more than five years intervening.
It is not doubted that the lien would have been preserved until the date of the final decree, if the original action for partition, etc., had been commenced within five years of the date of the last execution.
The only question is, whether the action to marshal liens and enforce his judgment commenced by defendant in error, in March, 1869, and passed to decree at the November term, 1870, of the common pleas of Guernsey county, prevented the running of the statute. The plaintiffs in error, as well as the judgment debtor, were parties to that action, and the decree found the lien of the defendant’s judgment to exist, and ordered the sale of the premises to, pay it, subject, however, to a further order of distribution. That case was still pending for sale and further decree as to the proceeds, when the original action was commenced. It did not cease to be a pending action, because the clerk had *183 failed for several terms to place it upon the docket or court calendar.
Under such circumstances, we think the right of the defendant in error to share in the proceeds • of the sale was determined, in principle, by Dempsey v. Bush, 18 Ohio St. 376, where it was held that, “ in an action to subject mortgaged premises to sale, and to ascertain and marshal the liens thereon, a judgment creditor, who was properly made a party while his judgment was alive, will not lose his right to share in the distribution of the money arising from the sale, by the fact that his judgment became dormant pending the action.”
The variances between that case and this are immaterial. The fact that defendant in error went voluntarily into the action to enforce his lien—was plaintiff instead of a defendant—is of no consequence. The reason that he did not obtain the relief, in that action, to which he was entitled, was, that he was involuntarily brought into the original action, where the same questions and the same rights were, of necessity, adjudicated; so that he stood in the original action exactly upon the sg,me footing that he had in his own suit to enforce his lien. Indeed, the court in the original action was bound to find his rights according to the decree that had been rendered in his own suit, then pending in the same court, without looking to the judgment which had been rendered in his favor in the Circuit Court of the United States. Eor all the purposes of the decree under review, the finding and decree in the former case, still subsisting in full force, were conclusive as to his rights.

Motion overruled.