## POSTAL TELEGRAPH CABLE CO. v. SOUTHERN RY. CO.

(Circuit Court, W. D. North Carolina.   September 9, 1898.)

1. EMINENT DOMAIN—TELEGRAPH LINES—OBTAINING RIGHT OF WAY.

Rev. St. § 5263, authorizing telegraph companies to construct their lines over and along any military or post roads of the United States, does not give such companies the right to build their lines over the right of way of a railroad or other private property without the consent of the owner, or the condemnation of the right of way over such property in accordance with the laws of the state where situated.

2. SAME—STATUTE OF NORTH CAROLINA—CONSTRUCTION.

Code N. C. 1883, §§ 2010, 2011, provide the requisites and for the filing and service of a petition by a telegraph company for the purpose of condemning right of way.   Section 2012 provides that the subsequent proceedings in certain particulars "shall be as prescribed in this chapter for condemning lands to the use of railroads."   Held, that such reference incorporated into the telegraph statute the provisions of the railroad statute referred to only as they existed at the time of the enactment, and not as thereafter amended, but that the telegraph law was not affected by amendments of the railroad law relating to the contents of the petition or matters preceding its filing, such matters being separately covered by the telegraph law itself; nor was it rendered nugatory by an amendment of that part of the railroad law relating to the mode of fixing the compensation to be made by striking out a provision that no benefits should be considered by the commissioners, though such part was made, by the reference, a part of the telegraph statute.

3. SAME—CONDEMNATION PROCEEDINGS—SUFFICIENCY OF PETITION.

Under a statute requiring a petition by a telegraph company to condemn right of way to set forth and describe "the lands, privilege, or easement over which the right of way is claimed," it is not necessary that a petition asking the condemnation of right of way over the right of way of a railroad should state by what tenure the railroad company holds.

4. SAME—POSSESSION PENDING PROCEEDINGS.

Under the statutes of North Carolina a telegraph company seeking to condemn right of way for its line cannot be authorized to enter into possession and construct its line until the damages have been assessed and paid into court.

Proceeding by the Postal Telegraph Cable Company to condemn right of way for its line over the right of way of the Southern Railway Company.

McIntosh, Merriman & Merriman, for complainant.
Stiles & Holladay and F. H. Bushbee, for defendant.

SIMONTON, Circuit Judge.   The Postal Telegraph Cable Company filed its petition in the superior court of Guilford county, N. C., seeking to condemn a right of way over the lands of the Southern Railway Company.   The petitioner sought a right of way for the erection of its poles and the stretching of its wires a few feet within the outside limit of the right of way of the railway company, so as in no way to obstruct or interfere with the use of its track by the railway company.   The right of way sought extended through many counties of the state, the whole distance being largely over 200 miles.   The only other party to the petition was the Southern Railway Company.   Upon the filing of the petition, proceedings were taken to remove the controversy into this court, and, a motion to remand hav-

ing been refused, the case is now here. After the cause was retained in this court, the Postal Telegraph Cable Company filed another application, in effect praying that pending these proceedings it have leave to go upon the lands of the railway company, and construct its line, upon such terms of bond and security as the court should deem proper; at the same time averring that in no event could any other damages be assessed against it except such as were substantially nominal. The respondent, the Southern Railway Company, now comes, and moves that both petitions be dismissed. The motion is, in effect, a demurrer, and to sustain it are set out in full 16 grounds of demurrer. These embrace three general propositions: (1) That there is now no law in the state of North Carolina providing for the condemnation of lands or right of way for the use of telegraph companies. (2) That, if there be such law in North Carolina, the petition of the telegraph company in this case has not followed it in essential particulars. (3) That the petition is vague and uncertain in not stating how, and by what tenure, the lands owned by the railway company are held,—whether only as an easement or in fee.

1. The respondent contends that there is no law in the state of North Carolina providing for the condemnation of land or right of way for the use of telegraph companies. There is no doubt that any telegraph company incorporated by any state of the Union has the right to construct and maintain lines of telegraph along any railroad or other public highway in North Carolina, provided that they be so constructed as not to obstruct or hinder the usual travel thereon. Code N. C. 1883, § 2007. Such right may be obtained from the railway company owner of the land, franchise, or easement therein by contract. Code N. C. 1883, § 2008. The same Code (sections 2009, 2010) provided that, failing to make such a contract, the telegraph company could, exercising the right of eminent domain, obtain the right of way desired, and the right to erect its poles, and establish offices, upon making just compensation therefor. This same right to construct its lines along the right of way of post roads of the United States is given under the act of congress of 1866 to all telegraph companies accepting the provisions of that act (Rev. St. U. S. §§ 5263, 5269); and the petitioner is one of the companies which has complied with all the requirements of this act, and has secured its privileges. But, notwithstanding this, before the privilege can be exercised upon lands, the property of private persons or corporations, the consent of such persons must be obtained, or such proceedings must be had as will insure them just compensation. No act of congress can give the right of taking private property for public purposes without first paying just compensation. Const. U. S. Amend. 5. And although section 8 of article 1 gives congress power to establish post roads, and to make all laws which may be necessary to carry this power into effect, "like all other powers granted to congress by the constitution, the power to regulate commerce is subject to all the limitations imposed by this instrument, among them that of the fifth amendment." Monongahela Nav. Co. v. U. S., 148 U. S. 325, 13 Sup. Ct. 622. The mode or method of exercising this right of eminent domain is fixed by the laws of the several states. Such mode

or method is exclusive in its character in ascertaining the amount of the just compensation to be allowed. See Roberts v. Railroad Co., 158 U. S. 1, 15 Sup. Ct. 756; Sweet v. Rechel, 159 U. S. 380, 16 Sup. Ct. 43. The federal courts do not interfere with it, provided due process of law be furnished. Chicago, B. & Q. R. Co. v. City of Chicago, 166 U. S. 226, 17 Sup. Ct. 581. This being the case, we must look to the statute law of North Carolina alone for the mode of proceeding in the condemnation of lands or right of way,—for the conduct of the procedure, and for the steps by which the just compensation is reached. It is true that the purposes of the petitioner are greatly for the public benefit, that it is an important factor in interstate commerce, one of the agencies—and a most valuable agent—in interstate commerce, and that it is of most essential service to the citizen in time of peace and to the government in time of war. But the underlying proposition in our civilization and in Anglo-Saxon liberty is the protection of the citizen in the safety of his person and in the undisturbed enjoyment of his property. And when he is called upon to surrender that property against his will, for a public purpose, he is entitled to all the safeguards which the law has thrown around the exercise of the tremendous, though wholesome, right of eminent domain.

What, then, is the law of North Carolina on this subject, as provided for telegraph companies? Section 2010 provides that whenever no agreement, after application, can be obtained by the telegraph company for securing the right of way, it may, first giving security for costs, file its petition before the superior court of the county in which the lands are situate, or through which the easement, franchise, or privilege extends, setting forth and describing the lands, privilege, or easement over which the right of way is claimed, and the owners thereof; and, if the right of way is sought only over an easement or right of way, the party owning such easement need be the only defendant. Section 2011 provides for the service of a copy of this petition, with the proper notice to be served on the defendant. These two sections bring the parties into court. The next section provides the steps to be taken after the parties are in court, and how the important constitutional provision shall be observed,—the ascertainment of the just compensation, without which the right cannot be exercised. Section 2012 declares: "The proceedings for the condemnation of lands or any easement or interest therein, for the use of telegraph companies; the appraisal of the lands or the interest therein; the duty of the commissioners of appraisal; the right of either party to file exceptions; the report of commissioners; the mode and manner of appeal; the power and authority of the court or judge; the final judgment and the manner of its entry and enforcement; and the rights of the company pending the appeal,"—these distinct essential steps in the proceedings, all leading to the final result and concerned with that only,—"shall be as prescribed in this chapter for condemning lands to the use of railroads." This chapter in the Code here spoken of is chapter 49. The provisions of this chapter with respect to the condemnation of lands for the use of railroads are found in section 1945 et seq. Inasmuch as section 2010 sets forth

all the necessary statements for the petition of the telegraph company, and section 2011 provides for its service, only so much of the railroad law as directs proceedings after the petition is before the court is made applicable to telegraph companies. When, therefore, the petition is presented to the court, and the answers of defendants have been heard, with the proofs on each side, if the cause shown against the petition be insufficient, the court shall grant an order naming three disinterested freeholders to act as commissioners of appraisal, and shall fix the day for the first meeting of these commissioners. Section 1946 prescribes the duties and powers of the commissioners,—to issue subpœnas, administer oaths, examine witnesses, view the premises, adjourn, and appraise the compensation; "and in determining the amount of such compensation they shall not make any allowance or deduction on account of any real or supposed benefits which the parties in interest may derive from the construction of the proposed railroad." The commissioners make their report under seal. Either party may file exceptions before the clerk, and may appeal. If appeal is taken, the company may, notwithstanding, enter, take possession, and hold the land by paying into court the amount of the assessment. Then provision is made for the entry of final judgment, for the power to enforce the judgment, and care is taken to limit the title to the company only during its corporate existence. These are all the provisions made for the condemnation of lands or of any easement, and of the duty of commissioners, the right of exception, the report of commissioners, the mode of appeal, the authority of the court or judge, the final judgment and its mode of enforcement, and the right of the company pending appeal. Manifestly, it is all that is referred to in section 2012. This disposes of two positions taken in argument. Section 1949 authorizes the court to make all orders necessary to carry out the intent of the chapter where the mode and manner of conducting the proceedings to the appraisal and proceedings consequent thereon are not expressly provided. It is seen that these are minutely provided for, and this section has no application here.

It was also insisted that section 1952 provides for maps of the route to be made and filed in the office of the clerk of the court of the county through which the road may run. This provision applies to steps antecedent to the filing of the petition for condemnation, indicating the proposed route, and allowing objections to be made, so that it may be altered, if necessary. It is not that part of the railroad law prescribed for telegraph companies, for it makes its own provision as to the filing of the petition and the contents of the petition, and only adopts that part of the railroad law which prescribes the steps to be taken after the petition is in court. For the same reason section 1944 cannot be made to apply to telegraph companies. This section prescribes the formalities to be observed in filing a petition by a railroad company, and what the contents of such petition must be. Among others, it requires the company to state that the company has surveyed the line or route of its proposed road, and made a map thereof, and has filed it in the clerk's office, etc. But section 2010, which provides for the filing of a petition by a telegraph company,

and for its contents, makes no such or similar provision, and only calls in the aid of the sections relating to railroads for proceedings subsequent to the filing of the petition.

Such are the provisions of chapter 49 of the Code of North Carolina, relating to the condemnation of a right of way for a telegraph company, when it becomes necessary to exercise the right of eminent domain. The Code (section 2012) says that these proceedings on the part of the telegraph companies, and all subsequent steps therein, "shall be as prescribed in this chapter for condemning lands to the use of railroad companies." Chapter 49. The words are without qualification, "as prescribed in this chapter." Therefore they are to be found in the chapter alone. This was the manifest purpose of the act. Had the legislature intended that telegraph companies should always be bound by provisions of the law in this behalf as to railroad companies then or thereafter existing, it would have said so, either by adding the words, "or any amendment thereof hereafter adopted," or language equivalent thereto. The general rule unquestionably is that, when a statute refers to and adopts an existing law, its purport is confined to the law as it then exists, and does not embrace or include any subsequent modification of it. Kendall v. U. S., 12 Pet. 524; Shrew v. Jones, 2 McLean, 78, Fed. Cas. No. 12,818; U. S. v. Knight, 3 Sumn. 368, Fed. Cas. No. 15,539. Standing upon this principle of law, the respondent says that since the passage of the Code the legislature of North Carolina has amended the provisions in that instrument relating to the condemnation of land for railroad purposes in several important and vital particulars, and to that extent repealing provisions in the Code; that as to these provisions so repealed, they no longer exist,—are as if they never existed. Reg. v. Inhabitants of Denton, 14 Eng. Law & Eq. 127; Curran v. Owens, 15 W. Va. 224; Musgrove v. Railroad Co., 50 Miss. 681; Insurance Co. v. Ritchie, 5 Wall. 544; Railroad Co. v. Grant, 98 U. S. 398. Were the rule otherwise, the courts would insert in the statutes essential words which the legislature chose to omit. U. S. v. Goldenburg, 168 U. S. 103, 18 Sup. Ct. 3. The defendant contends, therefore, that these amendments have emasculated the provisions of the Code in this behalf, and they no longer have the meaning they had. That thus there exists no practicable method for securing the right of way for telegraph companies, and, in effect, no law is of force applicable thereto. This brings up the vital question in this case, and necessitates an examination into the effect and purpose of these amendments. Since the passage of the Code the legislature of North Carolina have amended this chapter in the following particulars: Sections 1944, 1946, 1952. Section 1944 has been amended by striking out all requiring the petition of the railroad company to state that the line or route of the proposed road has been surveyed, and a map made, the road located, the location certified and filed with the clerk. Act March, 1893. As has been seen, section 2010, addressed exclusively to telegraph companies, states minutely the facts to be set forth in the petition by telegraph companies, and makes no requirement of a map. No reference is made to any provision of the Code as to railroad companies until section 2012 is reached, and that section relates

entirely to proceedings and steps to be taken after the petition has been filed and served, and has become of record.   This amendment in the act of 1893 therefore affects telegraph companies in no way. In this same act section 1952 is repealed.   This section required that a map should be filed with the clerk, showing route and location of the proposed road before constructing it.   In lieu of this section another was passed, requiring the railroad company, at the time of serving the summons, also to serve such a map.   For the reasons stated above, this amendment cannot affect telegraph companies.   It relates to regulations required before the cause is in court.   The legislature, in 1891, amended section 1946.   This section is one of those expressly made applicable to telegraph companies in the important provision as to the duties of the commissioners in determining the amount of just compensation.   As has been stated, that section used these words:   "And in determining the amount of such compensation they shall not make any allowance or deduction on account of any real or supposed benefits which the parties in interest may derive from the construction of the proposed railroad."   Were this applied to a case like the present, the commissioners, in determining the amount of compensation to be awarded the railway company for the use of its right of way, could make no allowance or deduction for any supposed or real benefit which the railway company might derive from the erection of the proposed telegraph line.   The act of 1891 struck this provision out entirely, adding, however, this proviso: "Provided, however, that in case the benefits to the land caused by the erection of such railroad be ascertained to exceed the damages to the land, then the said railroad company shall pay the costs of the proceeding and shall not have judgment for the excess of benefits over the damages."   Applying these words to a case like the present, it would read:   "In case the benefits to the railroad company caused by the erection of the telegraph line be ascertained to exceed the damages to the said railroad company, then the telegraph company shall pay the costs of the proceeding, and shall not have a judgment for the excess of benefits over the damages."   Does this amendment render nugatory the  provisions of the Code as to telegraph companies, and in effect wipe them from the statute book?   That construction of statutes—indeed, of all written documents—should be ut res valeat non pereat; and if any construction can be made to reach this result it must be adopted.   Especially so in this case.   The legislature, after experience of the statute passed in 1874–75, re-enacted its provisions in 1883, and perpetuated an elaborate and careful method of securing to the people of the state and to the country at large the valuable services of telegraph companies.   To strike these from the statute books would require overwhelming and unanswerable arguments.   Under the circumstances it must be inquired, how can just compensation be measured when lands or rights of way are required for the use of telegraph companies?   It may be done either by construing this provision of the Code in section 2012  as adopting in ipsissimis verbis the language of section 1946, and reading section 2012 as if the words were again repeated.   In this case it could be said that mere implication could not repeal it, and so the damages

could be assessed thereunder. Or it may be held that the commissioners could assess the damages as if the qualifying words were out, —that is to say, following the instructions of the section immediately preceding the words afterwards stricken out, "ascertain and determine the compensation which ought justly to be made by the telegraph company to the railroad company." And, if necessary, the court in this respect could direct and instruct them as to a just method. In the present case, looking at it as a practical matter, no difficulty could arise. The railroad company denies altogether that any benefit or advantage can arise to it in the erection of the telegraph lines, and, on the contrary, avers that it is detrimental to it in the last degree. The commissioners would have before them no question of benefits, but one altogether as to damages. It does not appear to the court that this amendment destroys the provisions of the Code as to the condemnation of lands or rights of way for the use of telegraph companies.

2. Has the telegraph company in this case followed the requirements of the Code in these essential particulars? The petition follows closely, almost literally, the language of section 2010, prescribing what facts should be stated.

3. Is the petition vague and indefinite in any respect? It asks a right of way over the right of way of the railway company—a well-defined and well-known subject—under whatsoever tenure it may be held, above all thoroughly known to the railway company. It distinctly specifies what part of the right of way is desired,—so many feet from the outer edge of the right of way or anywhere in which it would not obstruct or impede the use of its track; all subject to the provisions of section 2007 that the line be so constructed, and, after construction, be so maintained, as not to obstruct or hinder the usual travel on the railway. This is a condition inherent in the use. The cause has been heard, as it were, on general demurrer; at the least, on demurrer going to the merits of the case. No facts are in dispute, and the question of law controls. No answer over is necessary. The defendant, however, asks that pending these proceedings it be allowed to enter upon the erection of its poles and the construction of its lines. The mode of exercising the right of eminent domain—a right claimed here under the laws of the state—is prescribed and fixed by the laws of the state. This court is bound by and must act within its provisions. These laws made no provision for entry on the lands sought to be condemned until the damages are assessed and paid into court. It must be observed that we are dealing with a case in which the petitioner seeks the protection of the law, and asks that he get rights in the mode and under the provisions of that law. He has not entered. He is not in possession. He seeks a right to enter and to take possession. Under these proceedings he cannot get these rights, except in the language of the act (section 1946). Plaintiff's second petition is dismissed. Commissioners will be appointed under section 1945, who will proceed as in the Code directed, making such compensation as shall be just.