### E. M. BRANCH v. ARCHIBALD H. LOWERY.

The statutes of Texas declare that judgments shall operate as a lien upon real estate to the extent of the county in which the judgment is rendered. (Paschal's Dig., Arts. 3783, 3953, 3954, Notes 873, 874, 935, 936.)

A judgment rendered in the circuit court of the United States operates as a lien upon all land situated within the district, whether the same be in the county where the judgment was rendered or not.

ERROR from Walker. The case was tried before Hon. PETER W. GRAY, one of the district judges.

On the 12th of January, 1856, judgment was obtained

by the defendant in error against one W. W. Leach, in the circuit court of the United States, then sitting at Galveston.

Execution was issued on the 29th of March, 1856, and the land in controversy sold by the marshal to Lowery, to satisfy the execution, on the 4th day of November, 1856. On the 24th of January, 1856, twelve days after Lowery's judgment was obtained, said W. W. Leach conveyed this land, situated in Walker county, and within the jurisdiction of said court, to one A. M. Branch, "in trust," for the use of S. W. House & Co. and R. M. Hogul, to secure the payment of certain debts due from said grantor to the "*cestui que trust.*"

The trustee sold the land, in virtue of said deed, on the 12th of December, 1857, and the "plaintiff in error" became the purchaser. He went into possession under the purchase, and the case below was a suit by A. H. Lowery, purchaser at said marshal's sale, to recover said land from "plaintiff in error."

No question of fraud was raised below upon any of the acts by any of the parties, or as to any informality in the acts of either.

The court below held that the judgment of the "federal court" was a lien on the land situated in Walker county from its date, on the 12th January, 1856, and that the conveyance by Leach to the trustee, A. M. Branch, was subject to such lien.

The plaintiff in error complains of this judgment of the court below, substantially as assigned for error, that it was contrary to law, for that a judgment of the circuit court of the United States sitting at Galveston was only a lien on the real estate of defendant in said judgment situated in the county where the judgment was obtained.

*Sherwood & Flournoy*, for plaintiff in error.—There are two modes known to the laws of this country by which a

xxxi—7

judgment creditor may acquire a lien in virtue of said judgment.

I.  Growing out of the inherent right of courts to enforce their own process.   And ever since the law of England permitted the suing out of an "*elegit*" to subject a "moiety" of the lands of the judgment debtor to the payment of his debts, the doctrine has in general been held that the judgment, from its date, became a lien upon all the real estate situated within the jurisdiction of the court granting it, and that the levy of the execution issued thereon by the proper officer related back to the judgment, and cut off all intermediate incumbrances.

II.  The lien is also created or limited by enactment of the state legislature.

If there were no statute of Texas in force at the time of said judgment providing for a lien, then there would have been no ground upon which to contest the action of the court below, because the general course of decisions, both in England and America, have held that liens of judgments attach throughout the territorial jurisdiction of common-law courts from the date thereof, provided execution thereon be afterwards issued and levied.   But we contend that the statute law of Texas, in force at the date of the judgment, which regulates liens, supersedes those rights which depend upon the inherent powers of courts to issue and enforce their process throughout their jurisdiction.

The 34th section of the judiciary act of 1789 provides, "That the laws of the several states, except where the constitution, treaties, or statutes of the United States shall otherwise recognize or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States when they apply."   (Swift v. Tyson, 16 Pet., 1; Williams v. Benedict, 8 How., 107; Clements v. Berry, 11 How., 411.)

The same doctrine is distinctly reasserted in 2 Black, 430, to wit: "That liens of judgments in the United States

circuit courts depend exclusively upon the legislative en-
actments of the state."

In Paschal's Digest, article 3783, it appears that the
laws of Texas (in force at date of said judgment herein)
provided that all judgments in courts of record should
be a lien on the "land of the defendant situated in the
county where the judgment is rendered from the date of
the judgment."

[They reviewed Massingill v. Downs, 7 How., 960.]

*F. C. Hume*, for defendant in error, cited 7 How., 760;
11 How., 410; Ward v. Chamberlain, 2 Black, 430; 2
McLean, 78; 4 McLean, 612; 5 Ohio, 408.

I. "The lien of a judgment in the federal court is by
analogy to the state laws co-extensive with the territorial
jurisdiction of the court." (Trapnell v. Richardson, 8 Eng.,
(13 Ark.,) 543; Byers v. Fowler, 7 Eng., 218.)

II. "A judgment rendered in the circuit court of the
United States for the district of New York becomes a lien
on the lands of the judgment debtor within the state the
day on which it is docketed." (Koning v. Bayard, 2 Paine,
351; Manhattan Company v. Evertson, 6 Paige, 457.)

III. The lien of a judgment in the circuit court of the
United States for the eastern district of Pennsylvania "is
coextensive with the district, and is not confined to the
county of Philadelphia merely." (Lombard v. Bayard,
1 Wall., jr., 196; U. S. Dig. of Decis.—Ann. Dig., vol. IV,
1850—vol. 10, p. 312; Roads v. Symmes, 1 Ham., 281.)

LINDSAY, J.—The issue of law which is sought to be
settled in this writ of error is simply whether the judg-
ment lien upon the lands of debtors, created by the statute
law of Texas, is restricted to the lands in the county in
which the court is holden when the judgment is obtained
in the circuit court of the United States. As no facts are
put in issue in the record for our consideration it is need-

less to recite the facts, showing the nature of the contro-versy, further than is indicated in the mere inquiry into the extent of the lien of a judgment of the circuit court of the United States upon the lands of the judgment debtor.

The judicial power of the courts of the United States extends to all cases, in law and equity, in the particular class of cases enumerated in the 2d section of article III of the constitution of the United States. The constitution has there defined the limits of the power, but it does not prescribe to what extent it shall be exercised by the circuit courts created under it. This is left to legislation by con-gress.

The judiciary act of 1789 prescribes, that "the laws of the several states, except where the constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply."

The constitutional powers of the circuit courts are ample, full, and complete in all cases at common law, to the extent of the jurisdiction conferred upon them by congress. The act of congress fixes the minimum amount in civil cases which shall confer jurisdiction and the class of cases in which their common-law powers may be exercised. Con-gress has also prescribed the territorial limits of their juris-diction. In such limits their jurisdiction over person and property is as absolute as is the state courts in their several local jurisdictions, both as to mesne and final process. The respective ministerial officers of the state and federal courts have a like authority to carry into execution the judgments of the court under whose authority they act in their re-spective local jurisdictions. The jurisdiction of the circuit courts of the United States is declared by the act of con-gress to be concurrent with the courts of the several states in all suits of a civil nature at common law or in equity. Jurisdiction, in its judicial sense, has a twofold significa-

tion. It is either local, which expresses the territorial limits in which the power of the court may be exercised, or it is potential, which means simply the legal power or authority which it possesses of executing the laws and distributing justice within the local limits to which it is restricted by the law-making or political power of the government. If a state court, by its statute, therefore, establishes or fixes a lien by its judgment in the local limits of its jurisdiction which may be carried into effect by its ministerial officer, by parity of reasoning the circuit court of the United States, whose potential jurisdiction is concurrent with that of the state courts, must produce the same result within its local limits. The laws of a state can have no control, *proprio vigore*, over the action of the federal government in any of its civil departments, unless they be adopted or recognized by an express act of congress. The congress of the United States, *ex gratia*, by its statute, has recognized the laws of the several states as the rule of decision in trials at common law so far as they apply. The laws of this state have established a lien by the judgment of its courts in each county upon the lands of debtors situate in the county. The trials in the state courts having "original and general jurisdiction" are had in each county. The trials in the circuit courts of the United States are held at a particular and single locality in a district comprising a number of counties, and its jurisdiction in that district is not only analogous to, but identical with, the jurisdiction of the state courts in the several counties, by virtue of the act of congress adopting the laws of the several states as rules of decision in trials at common law. Its mesne and final process in the district operates the same way and to the same extent as the mesne and final process from the state courts in the several counties. The same efficacy, therefore, should be given to the judgments of the circuit courts of the United States upon the same subject-matter of their jurisdiction in their districts as is allowed to the

state courts of "original and general jurisdiction" in the several counties where their judicial power is exercised, because their original cognizance is made concurrent with such state courts over the same subject-matters by act of congress.

It would certainly seem futile that congress would adopt the state laws as rules of decision, and, while submitting to all the disabilities and inconveniences which may be imposed by them, should deny themselves all the advantages conferred by such laws. We think such an interpretation of the acts of congress, recognizing the laws of the states as rules of decision, would be repugnant to common reason, and would tend to reverse and subvert the order of the judicial system of the nation. The courts of the United States are made the final arbiters of such a question as the interpretation of the force and effect of its own laws by the constitution of the United States.

The matter to be considered here involves the construction of the statutes of the United States, submitting to the laws of the several states as rules of decision in cases where they apply. Whatever, therefore, may have been determined by the United States courts upon subjects like the present comes to us in an authoritative way, even though the point here involved were only incidentally determined by those courts. While those courts have uniformly said that they will receive as authoritative the construction which state courts give their own statutes, wherever any statute of the United States comes under review the courts of the United States, by the constitution, are made the ultimate arbiters of its force and effect.

We think this question has been virtually settled by the supreme court of the United States in the case of Massingill *et al.* v. Downs, 7 How., 764. Although the particular point now under consideration was not directly in issue in that case, yet the court, in reasoning out its conclusions in that cause, has spoken with a distinctness not to be

misunderstood, and which may be said to set this question at rest definitively. In that opinion Justice McLEAN, who delivered it as the voice of the whole court, says: "In those states where the judgment on the execution of a state court creates a lien only within the county in which the judgment is entered, it has never been doubted that a similar proceeding in the circuit court of the United States would create a lien to the extent of its jurisdiction. This has been the practical construction of the power of the courts of the United States, whether the lien was to be created by the issuing of process or by express statute."

Such is the language of that court in reference to the precise state of case now being considered. What that court takes for granted may readily be conceived to be the settled conviction of the court, and would no doubt, upon a direct trial of such an issue, be the deliberate judgment of that tribunal. The opinion of the court in that case was delivered in 1849. Prior to that time, in the year 1840, in the United States circuit court for Indiana, in the case of Shrew & Winter v. Jones, 2 McLean, 84, language equally significant as that quoted from 7 Howard was used by that court in regard to just such a statutory restriction upon a judgment lien as we have in this state. It was also declared by the court that "the principles of the state law are adopted, but the instruments which give effect to those principles are necessarily different, and they are made to operate throughout a more extended jurisdiction." This obviously means, that in the statute for judgment liens upon land, authorized by the state, the principle in it is the lien which is adopted by congress, and operates in a more extended jurisdiction, unaffected by the restrictions imposed upon the state courts. It is not to be supposed that congress intended to adopt the state laws in any other sense. It never could have designed by such adoption to subordinate its own tribunals to state authority. Hence we conclude that, when judgment liens are created by stat-

ute in this state, the act of congress adopting the state laws as rules of decision as far as they apply appropriates, *eo instanti*, the principle of lien by its own inherent vigor, or else by other acts establishing the courts and defining the limits of their territorial jurisdiction; and it is made as efficacious in every part of the district as if the court was itinerant, and went from county to county to pronounce its judgments. Any other interpretation of the various acts of congress, adopting the state laws as rules of decision and establishing courts in the several states, would introduce confusion in the judicial system of the United States, and break up that harmony between the state and national governments which was most obviously designed to be secured by that very act of adoption.

The argument, from the inconvenience of this view of the law to subsequent purchasers, is not valid, because the presumption of law is that every citizen knows the laws of the United States, as well as the laws of the state where he may be commorant. The location of the court and its records are as well known as the county seats and records of the several counties, and may be consulted as well, with varying facilities to each citizen according to his nearness or remoteness from each of those sources of information.

Most certainly it is unsound in political philosophy to assume that the paramount authority in a nation should be trammeled in its legitimate action by the mere policies of its inferior and subordinate members.

From the view of the law which we consider we have been required to take we must affirm the judgment of the court below, which is accordingly done.

JUDGMENT AFFIRMED.