## ANDREW DILLMAN
### v.
## THE WILL COUNTY NATIONAL BANK ET AL.

*Homestead—Assignment—Practice.*

1. The oath administered to householders summoned as commissioners by a master in chancery, under a decree of court enforcing a lien, to appraise and set off a homestead, may be administered by a notary public.

2. The fact that the summons to the commissioners, and other papers in the proceedings before them and the master, were written, except the signatures, by the solicitor for the party whose lien was enforced, does not invalidate the assignment of homestead, or the sale.

[Opinion filed May 28, 1890.]

APPEAL from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding.

Dillman v. Will County Nat. Bank.

This is an appeal from an order of the Will County Circuit Court overruling and refusing appellant's motion to set aside and vacate a sale of certain real estate made by the master in chancery, pursuant to a decree of that court in a cause theretofore pending therein, wherein the bank above named was complainant and the appellant and others were defendants.

A final decree was rendered in that court on the 25th of June, 1888, finding that the complainant was indebted to the bank in the sum of $15,324.16, and to John W. Nadelhoffer in the sum of $8,647.89. The court further found that the claim due the bank to the extent of $9,493.87 was a first and prior lien upon the property mortgaged to the bank, and that the claim of Nadelhoffer was a second lien thereon to the extent of $8,647.89; that of the balance due the bank, to the extent of $5,158.20, was a junior lien to that of Nadelhoffer, and third in the order of payment and satisfaction. Nadelhoffer claimed as a judgment creditor of Dillman, having a lien upon the mortgaged real estate by a judgment, execution and certificate of levy thereon, duly recorded, subsequent in date to the bank mortgage. The decree also found that as against both the bank and Nadelhoffer, the appellant had an estate of homestead in the real estate mortgaged to the bank and levied upon by Nadelhoffer. By the decree the appellant was ordered within ten days from its entry to pay the before mentioned sums of money to the bank and Nadelhoffer, and that in default thereof, " the master in chancery shall proceed according to law to summon three householders as commissioners, who shall, upon oath to be administered to them by the said master, or by any officer authorized by law to administer oaths, appraise the value of said premises, and if, in the opinion of said commissioners, said premises may be divided without injury to the interests of the parties, so as to set off a homestead, including the dwelling house on said premises, of the value of $1,000, they shall so set off such homestead out of said premises, and the residue of said premises shall be advertised and sold by the master in the manner hereinafter provided. And if, in the opinion of the commissioners, such homestead can not be specifically set off from

said premises without injury to the parties interested, then that the said master advertise and sell all of said premises, or so much thereof as may be sufficient to realize the amount due said bank and the said Nadelhoffer," etc. The decree not being paid as therein directed, on the 10th of July, 1888, a summons was issued, signed by the master in chancery, to three householders, as commissioners severally named therein, to set off and appraise the said homestead premises, and the summons was duly served. On the 11th of July the commissioners, having been sworn, reported to the master that they had duly appraised the premises, that the same were not susceptible of division without injury to the parties, etc., and the whole value thereof was $13,000. On the 13th of July, 1888, the master signed a notice which, on the same day, was served upon appellant, notifying him of the said appraisement, and that unless within sixty days the said sum of the appraisement, less the $1,000 homestead, be paid as by law provided, the whole premises should be sold pursuant to the decree. No objection is taken in matter of form to any of the above mentioned proceedings to set off the homestead, and such proceedings all were in due form, as is provided by the statute, unless and except in the following particulars; that the summons, including the names of the persons to act as such commissioner in the body of the summons, the report of the commissioners except signatures thereto, the notice to the appellant thereof and demand of payment in excess of the $1,000, except the signature thereto, was in the handwriting of one Egbert Phelps, the solicitor of the bank, and the oath to the commissioners, which was in fact as shown by the report, administered by the said Phelps, who at the time was acting notary public, and authorized by law to administer oaths at the time and place, etc.

The appellant having failed to pay the balance of the appraisement under the notice, at the expiration of the sixty days, the master duly advertised the premises for sale pursuant to the decree, and on the 8th of October, 1888, the day and time noticed for sale, sold the same for the sum of $17,000. The sale was duly reported by the master to the court on the

24th of October, and on the 31st of that month à rule *nisi* was entered in the cause, requiring all parties in interest to show cause, or the report would be approved.

No cause being shown, under the rule, and no objection being made thereto, that report of sale was approved on the 6th of November, 1888. Thereafter and on the 27th of June, 1889, appellant entered his motion in that court to set aside the master's sale of the said premises, because as claimed in said motion, the homestead of appellant was not legally assigned, nor was the premises legally appraised, and the sale was in other respects illegal and improper. It was admitted in the trial court that the $1,000 (homestead) had, after sale ·made, been tendered to appellant, and his refusal to receive the same, and that such sum now remained in the hands of the master, subject to appellant's order.

Upon the hearing of this motion the court below overruled and denied the same and refused to set aside the sale of said premises, and to reverse that order an appeal was taken to this court.

Mr. GEO. S. HOUSE, for appellant.

Messrs. HILL & HAVEN and HALEY & O'DONNELL, for appellees.

UPTON, P. J. We assume that by the pleadings in the original suit of the bank against appellant and others, in the chancery proceeding, there was sufficient to justify that court in rendering the decree it did, and to take cognizance of the homestead rights of the appellant as to the premises here in question, and to provide for setting off the same as it decreed, no question being made upon that point in either the argument or the record before us.

The grounds of error here assigned are:

First. That the commissioners selected to set off appellant's homestead were not sworn by the master in chancery, but by a notary public.

Second. That Egbert Phelps, solicitor for the bank, drafted

all the papers for the master, signatures excepted, and in fact
selected the commissioners, instead of the master, as required
by law.

First.    To sustain appellant's contention as to the first error
assigned, our attention is called to Sec. 10 of Chap. 52, Starr
& C. Ill. Stats.), which provides, " That if in the opinion of the
creditors or officer holding an execution against such house-
holder, the premises claimed as exempt are worth more than
$1,000, such officer shall summon three householders as com-
missioners who shall, upon oath to be administered to them
by the officer, appraise said premises," etc.

The contention of the appellant is that this provision of the
statute is to be applied to sales of like character made by the
master in chancery under a decree of a court of equity under
the provisions of Sec. 8 of the same chapter, which pro-
vides: "In the enforcement of a lien in a court of equity upon
premises, including the homestead, if such right is not waived
or released, as provided in this act, the court may set off the
homestead and decree the sale of the balance of the premises,
or if the value of the premises exceeds the exemption and
the premises can not be divided, may order the sale of the
whole and the payment of the amount of the exemption to
the person entitled thereto." Under this section it is insisted
the master must administer the oath to the commissioners as
was required of the sheriff under Sec. 10.   It will be seen
that Sec. 8 designates no particular manner in which a court
of equity shall set off and preserve to the householder the
estate of homestead in the enforcement of a lien in equity
thereon.

In support of appellant's position, we are cited to the case
of Cummings v. Burleson, 78 Ill. 281.   In that case the main,
if not the only, question was, whether the party claiming the
homestead had the right to participate in the selection of the
commissioners, appear before them and introduce evidence in
regard to the value of the premises out of which the home-
stead was to be assigned; and the court held he had not such
right, and in discussing that question said, that inasmuch as
Sec. 8 (*supra*) was silent as to the mode of procedure by a

court of equity in enforcing a lien on homestead premises, and as Sec. 10 (*supra*) was specific by legislative directions to the sheriff holding an execution, it was but fair to presume that the legislative intent was that the same course should be pursued *so far as was practicable* by the equity court through its master in chancery, as was required by the sheriff under Sec. 10.

This, in our judgment, falls far short of determining that in such proceedings in equity in the assignment of homestead, no one but the master in chancery could administer the oath provided by law to the commissioners, or that the proceedings must be under the supervision of the master in chancery to the extent as is claimed by the appellant. Indeed, in the subsequent case of Hotchkiss v. Brooks, 93 Ill. 386, the Circuit Court sitting in chancery upon bill filed for that purpose appointed commissioners and itself assigned homestead, without in any manner calling in aid the master in chancery, and such action was sustained as an incident to the equity power of that court.

There is no pretense that its procedure in manner or method had been determined in the case of the 78th Ill., although the same learned judge wrote in both cases. We can see no reason why the oath to be administered to the commissioners should be regarded by them as more sacred or of more binding force upon their conscience, if administered by the master, than by a notary public. It was purely ministerial in both cases on the part of the master or notary, and it is beyond our power to comprehend how the rights of the appellant could in the least degree be abridged or impaired or even affected thereby.

It is apparent, we think, that Sec. 2, Chap. 10, Starr & C. Ill. Stats. is sufficiently broad to authorize and empower a notary public to administer the oath to the commissioners to set off the homestead in the case at bar. That section provides that "All * * * notaries public shall have power in their respective districts * * * and jurisdiction to administer all oaths of office and all other oaths authorized or required of any officer or other person, * * * or on any occasion

wherein any affidavit or deposition is authorized or required to be taken."

That construction is given the section above quoted by the Supreme Court in Edwards v. McKay, 73 Ill. 570.

Second. That Egbert Phelps, the solicitor for the bank, acted as scrivener for the master in the draft of the summons to the commissioners, which was duly signed by the master in chancery; the acceptance of service thereof by the commissioners, which acceptance was signed by the commissioners severally; the oath to which the commissioners subscribed and which was administered to them; the report of the commissioners, which was duly signed by them, determining the premises not susceptible of division, and fixing the value thereof; the notice to appellant of such appraisement and demand for payment thereof, less the homestead, within sixty days, which was signed by the master and served upon appellant, and service thereof accepted by him, and wrote the aforementioned papers, is admitted.

That Mr. Phelps as scrivener or solicitor selected the commissioners, or had any control of, or took action in that matter other or different, is denied, and is not supported by any evidence, facts or circumstances in the case, as shown by the record.

It can not be overlooked in the case at bar that there is not even a suggestion by appellant's counsel, either in the record or argument before us, learned and astute as he is, that there was any fraud practiced or wrong done by the notary public in drafting these papers, or that either himself or the commissioners in the discharge of the acts and duties assigned them acted corruptly or impartially, or that the rights or interests of the appellant were in the slightest degree prejudiced thereby. On the contrary, counsel for appellant in the argument, in his frank and forcible way, says: "We desire to say that we know Mr. Phelps, the solicitor referred to, and have known him many years, and know he is morally, professionally, and in every other way, as straight as a gun barrel. In nothing that he did was there any intent to abridge the appellant of a single right." We are not aware of any rule

of law which requires the master in chancery to draft with his own hand the papers, of whatsoever character, he may be required in the discharge of his duties to issue or sign.

If the master signed such papers, whether it be a summons or otherwise, he adopts it as his act, and it thereby becomes his act as fully and completely, to all legal intents and purposes, as if he had written it with his own hand. Nor are the commissioners expected, much less required by law or usage, to write the report of their acts, findings or conclusions in the matters submitted to them. When the report is signed by them it becomes, *ipso facto*, their report.

It is a matter of no consequence who drafts the notice of such appraisement, or delivers the same to appellant; if notice is given him in due time and in proper form, it is, we think, proper compliance with the statute of the appraisement made by commissioners. Such has been the uniform construction by all officers as well as by the entire profession, so far as our own experience has extended, and we think it would, indeed, be a startling announcement to hold otherwise.

The *facts*, as contained in this record, also disclose and establish that the scrivener, Mr. Phelps, who drafted the summons, did not appoint, nominate or suggest the commissioners who appraised these homestead premises.

Mr. Phelps testified in the court below, in substance: "My recollection is that before preparing the summons to the commissioners, I suggested the names of one or two persons, neither of whom were selected to act or named in the summons, but, by the suggestion of the other attorneys in the case, including Mr. House, then and now acting solicitor and attorney for the complainant, the commissioners were agreed upon, as inserted in the summons"—and this is an uncontradicted fact in the case.

It is *certain*, also, by facts in this record, that appellant was not prejudiced in any manner by the act or judgment of the commissioners.

It is uncontradicted that the premises were not susceptible of division.

That being so, appellant's interest was to have the home-

stead appraisement as low as, in the judgment of competent men, it could be placed, to the end that he might be enabled to redeem it by paying the amount of such appraisement, less the $1,000 exemption.

The appraisement was made and the value thereof fixed by the report at $13,000. In less than ninety days thereafter the premises sold at master's sale for $17,000. Surely appellant was not and could not have been prejudiced by any act or error of judgment on the part of the commissioners, prejudicial to himself. That appraisement we regard, as all must regard it, as most favorable to appellant, and he can not be heard to complain of errors to his own advantage.

No complaint is made that the commissioners were not capable, suitable and honest men, and acted most indulgent to appellant, but it is said they did not go in a body and personally examine the premises appraised. If it be conceded they did not so go upon the premises or into the house it would be a sufficient answer to say, that the statute did not require them so to do. If they knew the situation and condition of those premises from previous observation or examination sufficiently well to enable them to fix and determine the actual value thereof, upon their oaths, that was all the law required. If they were of the class of men indicated by the evidence and conceded by the arguments and record before us, can we not properly say, that as a legal conclusion, we are bound to presume they had such knowledge from their acts?

We have carefully examined the record before us, in the light of the argument submitted, and we are compelled to say that we are unable to see any merit in the objections to the proceedings in the assignment or attempted setting off of appellant's homestead, in the appointment of the commissioners to set off the same, in their action in the appraisement of the value thereof, or in the acts, doings or neglect of the master in chancery in regard thereto, of which appellant should be now heard to complain, and we think the order of the court below should be affirmed.

*Order affirmed.*