## Rock Island National Bank et al. v. Thompson & Root et al.

1.  FEDERAL JUDGMENTS—*Liens of.*—The question, what is the lien of a judgment rendered in the Federal courts, is one of Federal law, to be conclusively settled by the construction adopted by the highest Federal tribunal.

2.  FEDERAL COURTS—*To What Extent Bound by State Laws.*—To what extent courts of the United States are bound by the statutes of the State in which they are held, in practice, pleadings and modes of procedure, is a question of Federal law upon which the conclusions of the Supreme Court of the United States are final.

3.  JUDGMENTS—*In Federal Courts—Extent of the Lien of.*—A judgment rendered in the United States Court for the Northern District of

Illinois on March 31, 1888, is a lien upon all the lands of the person against whom it is rendered, situated in the district for which said court is holden.

4. CONSTRUCTION OF STATUTES—*Retrospective Laws.*—Statutes are usually construed as operating on cases which come into existence after they are passed, unless a retrospective effect is clearly intended. Retrospective laws are not looked upon with favor.

5. JUDGMENTS—*Of United States Court, When to be Liens on Property in States—Construction of Statute.*—The act of Congress regulating the liens of judgments and decrees of the courts of the United States, passed August 1, 1888, providing that judgments and decrees rendered in a Circuit or District Court of the United States within any State shall be liens on property throughout such State, in the same manner and to the same extent and under the same conditions only as if such judgments and decrees had been rendered by a court of general jurisdiction of such State, and providing "that whenever the laws of any State require a judgment or decree of a State court to be registered, recorded, docketed, indexed, or any other thing to be done, in a particular manner, or in a certain office or county or parish in the State of Louisiana, before a lien shall attach, this act shall be applicable therein whenever, and only whenever, the laws of such State shall authorize the judgments and decrees of the United States courts to be registered, recorded, docketed, indexed, or otherwise conformed to the rules and requirements relating to the judgments and decrees of the courts of the State," is not intended to have a retroactive effect, and does not apply to judgments already liens under prior laws.

6. STATUTES—*Construction of the Act of June 3, 1889—Liens of Judgments.*—The act of the legislature of the State of Illinois, in force July 1, 1889 (Laws 1889, 195), amending Section 1 of Chapter 77 of the Revised Statutes, providing that upon the filing in the office of the clerk of any court of record, in any county in this State, of a transcript of a judgment or decree rendered in any other county of this State, such judgment shall have the like force and effect, and shall be a lien upon the real estate of the party against whom the same is obtained in said county where filed, and execution may issue thereon in said county in like manner as in the county where originally obtained, has no application to judgments which had already become liens upon real estate under prior laws.

7. SAME—*Construction of the Act of April 29, 1889—Judgments of Federal Courts to be Recorded, etc.*—The act of the legislature of Illinois, approved April 29, 1889 (Laws 1889, 197), providing that judgments and decrees of courts of the United States held within this State, and all writs, returns, certificates of the levy of a writ and records of said courts may be registered, docketed, indexed or otherwise dealt with in the public offices of this State, so as to make them conform to the rules and requirements relating to judgments and decrees of courts of this State, has no application to judgments and decrees of the Federal

courts which were, at the time this act went into effect, already liens upon real estate under prior existing laws.

8. EQUITY PRACTICE—*Affirmative Relief Without a Cross-bill.*— When a bill for foreclosure of mortgage alleges that a party, naming him, has, or claims to have, some interest in the mortgaged premises, and such party answers asserting, and in the trial establishes, a prior lien, if the bill prays for the sale of the premises to satisfy the mortgage debt, and that upon a sale being made, the money arising therefrom be brought into court to be distributed among the parties according to law, such party establishing a prior lien is entitled to have such lien satisfied out of such money without filing a cross-bill.

In Equity—Mortgage Foreclosure.—Appeal from the Circuit Court of Rock Island County; the Hon. JOHN J. GLENN, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed December 17, 1897.

SWEENEY & WALKER and W. R. MOORE, attorneys for appellants, contended that appellees' judgment never became a lien upon lands outside of Cook county. The lien is purely statutory and can only be acquired by strictly observing the statute of the State in which the land is situated. The lien of United States court judgments is governed entirely by the statutes of Illinois. The statutes confine the lien to the county in which the court is sitting.

Prior to 1839 there was no provision in the statute of Illinois that the judgments of either the State or Federal courts could be made a lien in any other county. Rev. Stat. Ill., Sec. 1, Chap. 77, Judgments; Rev. Stat. Ill., Sec. 4, Chap. 77, Judgments; Rev. Stat. Ill., Sec. 34, Chap. 77; U. S. Rev. Stat. 1878, Secs. 721, 914, 915, 916; Rev. Stat. Ill. (1895), Sec. 1, Chap. 77, as amended in 1889; Rev. Stat. Ill. (1895), Sec. 66, Chap. 77, enacted in 1889; Hall v. Green, 60 Miss. 47; Reid v. House, 2 Humph. (Tenn.) 576; Brown v. Pierce, 7 Wall. (U. S.) 205; Wayman v. Southard, 10 Wheat. (U. S.) 32; Oakes v. Williams, 107 Ill. 154; Fogg v. Blair, 133 U. S. 534; Tenney v. Hemenway, 53 Ill. 97; Hall v. Gould, 79 Ill. 16.

PECK, MILLER & STARR and JAMES O'NEILL, attorneys for appellees, contended :

I. That the lien of Thompson & Root's judgment covers

all real estate of the defendant in the Northern District of Illinois. Massingill v. Downs, 7 Howard (U. S.) 760, Shrew v. Jones, 2 McLean, 78, 83; Ward v. Chamberlain, 2 Black, 432; Brown v. Pierce, 7 Wallace, 217; Lombard v. Bayard, 1 Wallace, Jr. 196; United States v. Humphreys, 3 Hughes, 201; Koning v. Bayard, 2 Paine, 251; Trapnall v. Richardson, 13 Ark. 543; Sellers v. Corwin, 5 Ohio, 249; Prevost v. Gorrell, 12 Western Jurist, 369; Branch v. Lowery, 31 Texas, 96; Durham v. Heaton, 28 Ill. 264; Simpson v. Niles, 1 Ind. 196; Conard v. Atlantic Insurance Co., 1 Peters, 453; Ludlow v. Clinton Line R. Co., 1 Flippin, U. S. C. C., 25; Cropsey v. Crandall, 2 Blatchf. 341; Barth v. Makeever, 4 Bissell, 206; Carroll v. Watkins, 1 Abbott (U. S.), 474; United States v. Scott, 3 Woods, 334; Byers v. Fowler, 12 Ark. 218, (276); Lawrence v. Belger, 31 Ohio St. 175; United States v. Duncan, 12 Ill. 523; Pollard v. Cocke, 19 Ala. 188; Slack v. Walcott, 3 Mason, 508; Stillman v. White Rock Mfg. Co., 3 Woodbury & M. 539; Indianapolis R. R. Cc v. Horst, 93 U. S., 301; Dermott v. Carter (Mo.), 18 S. W. Rep. 1121; United States v. Scott, 3 Woods, 334; 18 Am. Law Rep. 261; U. S. Rev. Stat., Sec. 914; Foster's Fed. Pract., 2d Ed., Sec. 360; Phelps v. Oaks, 117 U. S. 239; Hinzie v. Elliott, per Dillon, J., 11 Western Jur. 633; United States v. Humphreys, 3 Hughes, 201.

II. That the legislation by Congress and by the legislature of Illinois was not intended to be retroactive. 25 U. S. Stat. at Large, 357 (2 Starr & Curtis, Ill. Stat. 2d Ed. 2383); Ill. Rev. Stat., Ch. 77, Sec. 1, (2 Starr & Curtis, 2d Ed., 2334); Ill. Laws, 1889, p. 197 (2 Starr & Curtis, 2d Ed. 2383).

(1) Federal rule on retroactive laws. Carroll v. Watkins, 1 Abbott (U. S.) 474, 482; McEwen v. Den, 24 How. 242; Sohn v. Watterson, 17 Wall. 599; Twenty Per Cent. Cases, 20 Wall. 187; United States v. Heth, 3 Cranch, 399; Barnitz v. Beverly, 163 U. S. 118; United States Bank v. Halstead, 10 Wheat. 51; Harvey v. Tyler, 2 Wall. 347; Sutherland, Statutory Construction, Secs. 463, 464, 471, 476; Chew Heong v. United States, 112 U. S. 536; Bronson v. Kinzie 1 How. 311.

(2) Illinois cases on retroactive laws. Betts v. Bond, Beecher's Breese, 287; Bruce v. Schuyler, 4 Gilm. 221, 279; Marsh v. Chesnut, 14 Ill. 223; Estate of Tuller, 79 Ill. 99; Garrick v. Chamberlain, 97 Ill. 620; Means v. Harrison, 114 Ill. 248; Robinson v. Rowan, 2 Scam. 499; Thompson v. Alexander, 11 Ill. 54; Hatcher v. Toledo W. & W. R. R. Co., 62 Ill. 477; Hansen v. Meyer, 81 Ill. 321; McHaney v. Trustees, 68 Ill. 140.

(3) General rule on retroactive laws. Quackenbush v. Danks, 1 Den. 128; Oatman v. Bond, 15 Wis. 20; Trustees v. Schell, 17 Wis. 317; Boorman v. Juneau Co., 76 Wis. 550; Amsbury v. Hinds, 48 N. Y. 57; King v. Belcher, 30 So. Car. 381; 9 S. E. Rep. 359; Town of Strafford v. Town of Sharon (Vt.), 17 Atl. Rep. 793; Seamans v. Carter, 15 Wis. 548; App. Tax Ct. v. Western Md. Ry. Co., 50 Md. 274; Vanderpool v. LaCrosse & M. Ry. Co., 44 Wis. 653; Sedgwick on Statutory Law, 166; Palariet's Appeal, 67 Pa. St. 479; Curtis v. Renneker, 34 So. Car. 468; O'Brien v. Krenz, 36 Minn. 136.

III.    That the judgment of Thompson & Root was such a vested right that neither Congress nor the legislature of Illinois could destroy it. Gunn v. Barry, 15 Wall. 610; Van Hoffman v. City of Quincy, 4 Wall. 535; Carroll v. Watkins, 1 Abb. (U. S.) 474; Pearce's Heirs v. Patton, 7 B. Monr. 162; In re Dillard, 9 Nat. Bank Reg. 8; Homestead Cases, 22 Gratt. (Va.) 266; Bronson v. Kinzie, 1 How. 311; Meyer v. Berlandi (Minn.), 40 N. W. Rep. 513; Sedgwick Stat. & Const. Law, 2d Ed. 661; Searl v. School Dist., 133 U. S. 553; White v. Hart, 13 Wall. 646; Calder v. Bull, 3 Dall. 388; Edwards v. Kearzey, 96 U. S. 595; Berry v. Ransdall, 4 Met. (Ky.) 292; Morris v. Carter, 46 N. J. L. 260; Johnson v. Fletcher, 54 Miss. 628; Planters' Bank v. Sharp, 6 How. (U. S.) 327; Blair v. Williams, 4 Litt. (Ky.) 34; Steamship Co. v. Joliffe, 2 Wall. 450; Eakin v. Raub, 12 Serg. & R. 360; Myer on Vested Rights, Sec. 18; Mills v. Charleton, 29 Wis. 400.

IV.    That the provision in the decree for the sale clear f liens and the payment of the Thompson & Root judg-

ment out of the proceeds, is correct. Ellis v. Southwell, 29 Ill. 549; Derrick v. Lamar Ins. Co., 74 Ill. 404; Shaver v. Williams, 87 Ill. 469; Armstrong v. Warrington, 111 Ill. 430; Blatchford v. Blanchard, 160 Ill. 115; Norton v. Joy, 6 Ill. App. 406; Dillman v. Will Co. Nat. Bank, 36 Ill. App. 272; 38 Ill. App. 566; 138 Ill. 282; 139 Ill. 269; McCullough v. Rose, 4 Ill. App. 149; Edgerton v. Young, 43 Ill. 464; Walker v. Abt, 83 Ill. 226; Crocker v. Lowenthal, 83 Ill. 579; Soles v. Sheppard, 99 Ill. 616; Chicago & G. W. R. R. Land Co. v. Peck, 112 Ill. 408, at 452–3; Rorer on Judicial Sales, Sec. 193; Bell v. Brown's Ad'm, 3 Har. & J. 484; Sues v. Leinour, 16 Ill. App. 603; Kilgour v. Crawford, 51 Ill. 249; Hards v. Burton, 79 Ill. 504; Horn v. Indianapolis Nat. Bank, 25 N. E. Rep. 558; Smith v. Kimball, 128 Ill. 583.

MR. JUSTICE DIBELL DELIVERED THE OPINION OF THE COURT.

On March 31, 1888, Thompson & Root recovered a judgment against the J. S. Keator Lumber Company in the Circuit Court of the United States for the Northern District of Illinois. On April 21, 1888, the defendant therein sued out from the Supreme Court of the United States a writ of error to review said judgment, and took certain steps to cause said writ of error to be made a supersedeas. Said judgment was affirmed by the Supreme Court of the United States on April 4, 1892, and execution and alias execution were issued as hereinafter stated. Two days after the affirmance of said judgment appellants filed for record in Rock Island county a mortgage from the said Keator Lumber Company upon real estate in said county, which said Keator Lumber Company had owned on March 31, 1888, and ever since that date, which mortgage was given to secure debts due appellants. Sixteen days after the mortgage was recorded, this suit was begun by filing in the Circuit Court of Rock Island County a bill to foreclose said mortgage. By amendment Thompson & Root were made defendants. They answered claiming their judgment was a first lien. Upon final hearing the court decreed the foreclosure of said mortgage, but found such judgment a prior lien upon said real estate, and

directed that it be first paid out of the proceeds of the sale of the mortgaged property. The mortgagees prosecute this appeal from said decree.

The Circuit Court of the United States when it rendered said judgment was sitting in Cook county. The real estate is in Rock Island county. The first question presented for decision is whether said judgment ever became a lien upon said real estate. Appellants earnestly contend that it only became a lien upon real estate in Cook county, where said court sat when it rendered judgment. Appellees claim it became a lien on all real estate of the Keator Lumber Company within the Northern District of Illinois, which includes Rock Island county. The legislation affecting this subject, which was in force when this judgment was rendered, is as follows:

Revised Statutes of the United States: "Sec. 914. The practice, pleadings and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the circuit and district courts, shall conform as near as may be to the practice, pleadings and forms and modes of proceeding existing at the time in like causes in the courts of record of the State within which such circuit or district courts are held, any rule of court to the contrary notwithstanding."

"Sec. 916. A party recovering a judgment in any common law cause in any circuit or district court shall be entitled to similar remedies upon the same by execution or otherwise to reach the property of the judgment debtor, as are now provided in like causes by the laws of the State in which such court is held, or by any such laws hereafter enacted, which may be adopted by general rules of such circuit or district court; and such courts may from time to time by general rules adopt such State laws as may hereafter be in force in such State in relation to remedies upon judgments as aforesaid by execution or otherwise."

Revised Statutes of Illinois of 1874, Chapter 77: "Sec. 1. That a judgment of a court of record shall be a lien on the real estate of the person against whom it is obtained, situ-

ated within the county for which the court is held, from the time the same is rendered or revived for the period of seven years, and no longer:   Provided, that there shall be no priority of the lien of one judgment over that of another rendered at the same term of court or on the same day in vacation.   When execution is not issued on a judgment within one year from the time the same becomes a lien, it shall thereafter cease to be a lien; but execution may issue on such judgment at any time within said seven years, and shall become a lien on such real estate from the time it shall be delivered to the sheriff or other proper officer to be executed."

" Sec. 2.   When the party in whose favor a judgment is rendered is restrained by injunction out of chancery, or by appeal, or by the order of a judge or court, or is delayed on account of the death of the defendant, either from issuing execution or selling thereon, the time he is so restrained or delayed shall not be considered as any part of the time mentioned in sections 1 or 6 of this act."

That Congress has power to pass all necessary laws to carry into execution judgments rendered by the courts of the United States, and that it may make them liens upon property of the debtor, whether such property is or is not subject to the lien of judgments under the laws of the State where the property is situated, though denied by Reid v. House, 2 Humph. (Tenn.) 576, must be regarded as settled by Wayman v. Southard, 10 Wheat. 1, and Bank of the United States v. Halstead, 10 Wheat. 51, and other decisions of the Supreme Court of the United States.   In any case the only question can be, how far has Congress exercised this power.   We also consider it too obvious for extended argument, that while the Supreme Court of this State is the final tribunal for the determination of the true construction of the State statute above quoted, as applied to the lien of judgments rendered by the courts of this State, yet when the question arises, what is the meaning of the said Federal statute, and to what extent the liens of judgments rendered in the courts of the United States within this State are gov-

erned by the said State statute, and whether the language of the State statute is to be applied literally, and with strictness, to judgments of the courts of the United States, upon such questions, the courts of the United States are the final arbiters. The question, what is the lien of a Federal judgment, is a question of Federal law, to be conclusively settled by the construction adopted by the highest Federal tribunal. To what extent courts of the United States held within this State are bound by our State statutes upon practice, pleadings and modes of procedure, is a question of Federal law upon which the conclusions of the Supreme Court of the United States are final. . That court has not adopted a literal construction of the provisions in question. It has been held by the Supreme Court of the United States that the words " as near as may be," in said section 914 above quoted, do not mean as near as may be possible, nor as near as may be practicable. That court said, in Indianapolis & St. L. R. R. Co. v. Horst, 93 U. S. 291, that this provision " devolved upon the judges to be affected, the duty of construing and deciding, and gave them the power to reject, as Congress doubtless expected they would do, any subordinate provision in such State statute which, in their judgment, would unwisely incumber the administration of the law or tend to defeat the ends of justice in their tribunals. While the act of Congress is to a large extent mandatory, it is also, to some extent, only directory and advisory." Accordingly it was there held that many statutory provisions as to practice in State courts are not binding and compulsory upon the courts of the United States within such State. To the same effect is Phelps v. Oaks, 117 U. S. 236, and other cases. A Circuit Court of this State has jurisdiction only within the county in which it is held, and when our State statute made its judgment a lien on real estate " situate within the county for which the court is held," it made the judgment territorially co-extensive with the jurisdiction of the court which rendered it. In the application of this language to the lien of a judgment rendered by the Circuit Court of the United States having jurisdiction over

the entire northern half of this State, the question whether the letter or the spirit of this statute is to fix the extent of the lien of such judgment is not a question of interpretation of our State law, but of the extent to which it was adopted for the Federal courts by the Federal statute quoted, and that is a Federal question to be settled by the courts of the United States.

This question was considered by the Supreme Court of the United States in Massingill v. Downs, 7 How. 760, and that court reached the following conclusions: "The Circuit Courts of the United States exercise jurisdiction co-extensive with their respective districts. It has never been supposed that by the process of 19th May, 1828, which adopted the process and modes of proceedings of State courts, the jurisdiction of the Circuit Courts was restricted. The 'process and modes of proceeding' in the State were adopted by Congress in reference to the jurisdiction of the Circuit Courts, and not with the view of limiting the jurisdiction of those courts. In those States where the judgment or the execution of a State court creates a lien only within the county in which the judgment is entered, it has not been doubted that a similar proceeding in the Circuit Court of the United States would create a lien to the extent of its jurisdiction. This has been the practical construction of the power of the courts of the United States, whether the lien was held to be created by the issuing of the process or by express statute. Any other construction would materially affect and in some degree subvert the judicial power of the Union. It would place suitors in the State courts in a much better condition than in the Federal courts." In Williams v. Benedict, 8 Howard, 107, that court said : "The process, both *mesne* and final, in District and Circuit Courts of the United States, being conformed to those of the different States in which they have jurisdiction, the lien of judgments on property within the limits of that jurisdiction, depends also upon the State law where Congress has not legislated on the subject. In some of the States a judgment is not a lien on land; in others there is a lien co-extensive with the jurisdiction of the court." In Brown v. Pierce,

7 Wall. 217, it was said : " Congress, in adopting the processes of the States, also adopted the modes of process prevailing at that date in the courts of the several States in respect to the lien of judgments within the limit of their respective jurisdictions."

Many of the Federal Circuit and District Courts have had this question before them. In Cropsey v. Crandall, 2 Blatchf. 341, it was held by Nelson, judge of the United States Supreme Court sitting upon the circuit, that a judgment or money decree docketed in a court of the United States for the Southern District of New York was a lien upon the lands of the defendant in whatever county of the district they were situated, notwithstanding non-compliance with a State law making it necessary to the creation of a judgment lien upon land in any county that a transscript of the judgment should be filed in the office of the clerk of that county. In U. S. v. Scott, 3 Woods, 334, decided by Bradley, judge of the United States Supreme Court, sitting upon the circuit, it was argued that a judgment rendered by the United States Circuit Court for the Western District of Texas, was not a lien until recorded in the county where the lands were, but the court held " the judgment is a lien upon all lands in the district within the jurisdiction of the court, and within reach of its process." The headnote to Carroll v. Watkins, 1 Abbott, 474, decided in the United States District Court for the Southern District of Mississippi, is as follows : " A State statute requiring judgments to be enrolled in the county in which the lands to be affected lie before they can become liens on real property, has no effect upon the lien of a judgment of a court of the United States. Such judgment becomes a lien on lands throughout the district in which it is recovered." In Shrew v. Jones, 2 Mc-Lean, 78, McLean, judge of the United States Supreme Court, sitting upon the circuit, said : " The law of Indiana regulating judgments and executions as it stood in 1828 is the law of Congress by adoption. Effect must be given to the provisions of this law, so far at least as they are adapted to

the organization and powers of this court.   If the rules of proceeding of the Circuit Courts of the State be followed by this court, effect is given to them without reference to the limited jurisdiction of those courts.   The limits of the State in the exercise of the jurisdiction of this court is as the limits of a county to the local court."   " The principles of the State law are adopted, but the instruments which give effect to those principles are necessarily different, and they are made to operate throughout a more extended jurisdiction." Barth v. Makeever, 4 Biss. 206, assumes a judgment by the Circuit Court of the United States for the district of Indiana was a lien upon all lands of the judgment debtor in that State.   The Circuit Court of the United States for the Northern District of Ohio, in Ludlow v. Clinton Line R. R. Co., 1 Flippin, 25, stated the law thus :   " The limits of a Federal judicial district in the exercise of the jurisdiction of the United States Circuit Court is as the limits of the county to the local courts.   *   *   *   The lien, therefore, of a judgment rendered in this court has the same effect, and operates to the same extent upon the debtor's land throughout the Northern District of Ohio as the lien of a like judgment rendered in the State courts operates on a debtor's land in a county."   The opinion of Caldwell, J., in Dartmouth Savings Bank v. Bates, 44 Fed. Rep. 546, holds that prior to the act of Congress of August 1, 1888, hereinafter stated, the lien of judgments of the Federal courts was " co-extensive with the jurisdiction of the courts."   He points out the hardships which led Congress to pass the act just referred to, and in so doing speaks of " the all-prevailing lien of a judgment in a Federal court," and how buyers " lost their lands by reason of the lien of judgments in Federal courts held in some other county."   He also holds that where States have not provided for docketing Federal judgments under said act of Congress of August 1, 1888, " in such States the lien of a judgment of a Federal court continues to be co-extensive with its territorial jurisdiction."   The opinion of Judge Drummond in U. S. v. Duncan, in the Circuit Court of the United States for this district, printed in 12

Ill. 523, assumes the lien of such a judgment extended throughout the State. There are other like decisions by other Federal courts and none to the contrary so far as we are advised.

It is therefore the doctrine of the Federal courts, passing upon a subject wholly within their judicial domain, that in construing and applying said act of Congress, it is not to be held a literal adoption of the State statutes to govern the lien of Federal judgments, but that the fact is to be considered that the jurisdiction of each Federal court extends over a much larger territory than any one State court of general jurisdiction, and includes the territory of many such State courts; that where the spirit and effect of the State law is to make the lien of the judgments of each State court of general jurisdiction co-extensive with the territory over which it has jurisdiction, the act of Congress will be held to have adopted said State law, in such spirit and effect, and that, as the effect of such act of Congress so adopting such State law, the lien of the judgments of each Federal court in said State will extend throughout the territory within the jurisdiction of such Federal court.

This question has been considered, and a like view adopted by State courts. Dermott v. Carter (Mo. Sup.), 18 S. W. R. 121; Trapnall v. Richardson, 13 Ark. 543; Branch v. Lowery, 31 Texas, 96; Sellers v. Corwin, 5 Ohio, 249. There are like decisions by other State courts outside of Illinois. Some States have held a contrary doctrine. Hall v. Green, 60 Miss. 47; Reid v. House, 2 Hump. (Tenn.) 576. There has been similar judicial reasoning by the Supreme Court of this State. Bustard v. Morrison, 1 Scam. 235; Durham v. Heaton, 28 Ill. 264. Jones v. Guthrie, 23 Ill. 421, (ejectment,) was decided upon the assumption that a judgment rendered by the United States Circuit Court for the District of Illinois (when the whole State was in one district) was a lien from the end of the term on lands in Schuyler county, where we judicially know it did not sit. In Tenney v. Hemenway, 53 Ill. 97, the opinion of the court assumes that certain judgments rendered by the Circuit Court of the

United States for the Northern District of Illinois were
liens upon real estate of the judgment defendant in Lee
county.    The text books are to the same effect.  ·1 Black
on Judgments, Sec. 415; Freeman on Judgments, Sec. 405.
It .is worthy of note here that our statute·does not say a
judgment shall be a lien on lands within the county *in*
which the court is held, but " within the county *for* which
the court is held;" and while our State courts of general
jurisdiction for the county are held exclusively in the county,
the Circuit Court of the United States for the Northern
District of Illinois is held for the county of Rock Island
just as truly as it is for the county of Cook, where the
court sits.    There are many cases where a strict application
of our statutes relating to practice and modes of proceeding
in civil cases would restrict the jurisdiction of the courts of
the United States to the counties in which they are held.
Sec. 2 of our practice act says it shall not be lawful to sue
any defendant out of the county where he resides or may
be found.  ·Ejectment must be brought in the county where
the land lies.   So of scire facias to foreclose a mortgage
(R. S. 1874, C. 95, Sec. 17) which is governed by the prac-
tice in courts of law.    An execution must issue to the
sheriff of the county where the land lies on which a levy is
sought, while Federal courts have no county officer answer-
ing thereto.    In each of these cases the word " County "
must be applied to Federal courts in the sense of " the terri-
tory within the jurisdiction of the court," or the greater
part of the State is beyond the reach of the Federal courts,
a result Congress never intended.    We, therefore, hold that
when judgment was recovered on March 31, 1888, by Thomp-
son & Root against the Keator Lumber Company in the
United States Circuit Court for the Northern District of
Illinois, sitting in Cook county, it became a lien upon the
lands of the defendant in Rock Island county within said
district.

On August 1, 1888, Congress passed an act to regulate
the liens of judgments and decrees of courts of the United
States.    25 U. S. Statutes at Large, 357.    It provided that

such judgments and decrees rendered within any State shall be liens on property throughout such State, in the same manner, and to the same extent, and under the same conditions only, as if rendered by a court of general jurisdiction of such State, and that whenever the laws of such State require the judgments or decrees of a State court to be registered, docketed, etc., in a particular manner or in a certain office or county before a lien shall attach, this act shall be applicable therein whenever, and only whenever, the laws of such State shall authorize the judgments and decrees of the United States courts to be so registered, docketed, etc. In 1889 the legislature of Illinois amended section 1 of chapter 77 of our statutes so as to provide for filing in the office of the clerk of any court of record in this State a transcript of any judgment or decree rendered in any other county in this State, and making it a lien thereafter upon real estate in the county where so recorded, with like force and effect as in the county where said judgment was rendered; and also passed an act (Laws of 1889, p. 197) providing judgments and decrees of courts of the United States held within this State may be registered, docketed, etc., in the public offices of this State, so as to conform to the requirements relating to judgments and decrees of courts of this State. It is claimed that in order to continue the lien in force upon the land here in question, it was necessary Thompson & Root should file a transcript of the judgment in the office of the clerk of a court of record in Rock Island county, and that for failure to do so they lost their judgment lien.

We do not concur in this proposition. There is nothing in either of said statutes indicating they were intended to have a retroactive operation, or were to apply to judgments which had already become liens upon real estate under prior laws. The language all refers to the future. Retrospective laws are not looked upon with favor. Statutes are usually construed as operating on cases which come into existence after the statutes are passed, unless a retrospective effect is clearly intended. Endlich on Interpretation of Statutes, Secs. 271, 273, 275, 276; Betts v. Bond, Breese,

287; Thompson v. Alexander, 11 Ill. 54; In re Tuller, 79 Ill. 99.

If these statutes are to be treated as retroactive because they relate to the remedy, their provisions for retroactive operation are void, because they give the holders of Federal judgments theretofore rendered no reasonable time in which to preserve their lien theretofore acquired upon lands in counties other than that in which the judgment was rendered, by procuring and filing transcripts of such judgments. Dobbins v. First Natl. Bank, 112 Ill. 553; Pearce v. Patton, 7 B.Mon. 162; Berry v. Ransdall, 4 Met. (Ky.) 292; King v. Belcher, 30 So. Car. 381; Gunn v. Barry, 15 Wall. 610; Edwards v. Kearzey, 96 U. S. 595. According to the position here contended for by appellants, upon the taking effect of these laws, the lien of Federal judgments on lands within the jurisdiction of the court, but outside the county where the court sat, was instantly destroyed, unless the plaintiff had foreseen the legislation and obtained and filed transcripts before said legislation went into effect. If such lien ceased when those laws went into operation, then before a new lien could be acquired by filing transcripts, subsequent judgments of State courts in the county and later incumbrances would in many cases intervene to destroy the value of the lien. We are of opinion an act framed for the purpose of accomplishing such a result could not be supported as to its retroactive features. The twenty-three days between June 3, 1889, when our statute for docketing judgments in foreign counties was approved, and July 1, 1889, when it went into effect, was not a reasonable time for plaintiffs in all Federal judgments at that time liens on real estate outside the county where the court was held, to learn of the new act and procure and file transcripts of such judgments in all counties where they wished to preserve the judgment liens they had already secured under prior laws. We hold that the lien of the judgment of Thompson & Root, having attached to these lands on March 31, 1888, was not defeated by the laws referred to.

The Revised Statutes of the United States, in force in

1888, provided as follows: "Section 1007. In any case where a writ of error may be a supersedeas, the defendant may obtain such supersedeas by serving the writ of error, by lodging a copy thereof for the adverse party in the clerk's office where the record remains, within sixty days Sundays exclusive, after the rendering of the judgment com. plained of, and giving the security required by law on the issuing of the citation. But if he desires to stay process on the judgment, he may, having served this writ of error as aforesaid, give the security required by law within sixty days after the rendition of such judgment, or afterward with the permission of a justice or judge of the Appellate Court. And in such cases where a writ of error may be a supersedeas, execution shall not issue until the expiration of ten days."

The record before us discloses that, acting in compliance with this statute, the Keator Lumber company sued out a writ of error to review this judgment, lodged a copy thereof for Thompson & Root in the office of the clerk of the court where the record remained, and obtained and served a citation to Thompson & Root, and also filed a supersedeas bond approved by Judge Gresham of that court. All this was done on April 21, 1888. The case was one where a writ of error could be a supersedeas, and, therefore, under said section 1007, execution could not issue until the expiration of ten days from March 31, 1888, or till April 11, 1888. The writ of error became a supersedeas on April 21st, ten days later. The effect thereof was to stay further proceedings to enforce the judgment, and that followed as a matter of right. Kitchen v. Randolph, 93 U. S. 86. The writ of error in this case purports to be an order of the acting chief justice of the United States Supreme Court, attested by the clerk of said Circuit Court, under the seal thereof. The citation is signed by Judge Gresham, of said Circuit Court. The supersedeas bond has endorsed upon it an order of approval by Judge Gresham. By the legal effect of these acts and order of the judges and court in issuing a writ of error and a citation, and approving a supersedeas bond,

Thompson & Root were restrained from obtaining an execution on said judgment. Appellants claim section 2 of chapter 77 of our Revised Statutes does not apply to a writ of error, but only to restrain by injunction or appeal. The effect of this position, if sustained, would be that if a defendant immediately after judgment is rendered against him in a Federal court, sues out a writ of error and takes the steps required to make it a supersedeas, and if the higher court detains the case a year, so that plaintiff can not obtain an execution within a year after the date of the judgment, then the lien of the judgment on real estate must be irretrievably lost. We are of opinion our statute has not made it possible for the defendant to defeat the lien of a judgment against him by his own subsequent act, and that this case is brought within the spirit and even the letter of said section 2. Therefore the time Thompson & Root were so restrained is not to be considered as any part of the year mentioned in said section 1 of chapter 77, within which execution must issue on a judgment or the judgment shall thereafter cease to be a lien. It is well settled that after said writ of error was made a supersedeas, plaintiff could not take out an execution till the mandate of the Supreme Court was filed in the clerk's office after the affirmance of the judgment. We are cited to cases where it has been held that if the clerk of the court issues execution, after affirmance and before mandate is filed, and there is a levy upon and sale of real estate and deed thereunder, though the execution and levy are irregular and must be quashed on motion, yet they are not absolutely void, and if not attacked in proper time may form the basis of a good title. This doctrine is not applicable here. The running of the year having been suspended by the action of the Keator Lumber Company (under whom appellants claim by a subsequent mortgage and by those prior acts appellants are bound), it did not again begin to run till Thompson & Root were in a position where they could compel the issuance of a valid and regular execution. That the clerk, if he had been willing, could have sooner issued a voidable execution, subject to be quashed on motion, is immaterial.

The judgment was affirmed by the Supreme Court of the United States on April 4, 1892. The mandate issued by the clerk of the Supreme Court is dated May 18, 1892, and was filed with the clerk of the Circuit Court May 23, 1892, and on that day execution was sued out by Thompson & Root, and issued by the clerk. This execution was lost. On April 12, 1893, this fact was shown to the said Circuit Court, and an order obtained for an alias execution, and the same was issued and placed in the hands of the marshal on that day. The proof made to obtain said order for the alias execution tended to show the original execution never reached the marshal. If the time when the year again began to run was May 23, 1892, when the mandate from the Supreme Court reached the clerk's office, then the alias execution was issued and placed in the hands of the marshal ten months and twenty-nine days after the judgment was rendered (excluding the time plaintiffs were restrained from issuing execution), and the lien of the judgment upon the lands in question was preserved for seven years (excluding the time of said restraint), and said seven years has not yet expired, and said judgment is still a lien. If, however, the restraint ceased and the year again began to run the day the Supreme Court affirmed the judgment, and if the lost execution is not to be considered because not shown to have been delivered to the marshal, then the alias execution did not issue till eighteen days after the year expired. We are of opinion the year did not begin to run when the judgment of the Supreme Court was pronounced. R. S., 1874, Ch. 110, Sec. 32; Smith v. Stevens, 82 Ill. 554. It is the filing of the mandate of the reviewing tribunal in the lower court that reinvests it with jurisdiction, and no mandate issues from the Supreme Court of the United States without an order of the court, and these orders are made just before the February recess and just before the adjournment of the term in May. No order for mandate will be made at any other time except upon special circumstances shown. 2 Foster's Federal Practice, Sec. 495. It does not appear Thompson & Root could have made an effective

special showing. They waited for the general order, and this mandate was issued immediately upon adjournment of said court and in compliance with the custom which prevailed. It reached plaintiff's counsel in Chicago by due course of mail on May 23, 1892, and was on the same day filed with the clerk of the court. We are of opinion plaintiffs exercised all reasonable diligence in securing and filing said mandate, and that the year did not again begin to run till the same was so filed. Therefore Thompson & Root preserved their lien for seven years from the date of the judgment (excluding the time of said restraint), and they still have a judgment lien on said lands as of March 31, 1888, and prior to that of appellants' mortgage.

Appellants assert that in the absence of a cross-bill it was error to give effect to the prior lien of Thompson & Root by decreeing that their judgment be first paid out of the proceeds of the foreclosure sale. This position ignores the state of the pleadings. The allegation of the second amended bill as to Thompson & Root was that they have or claim some interest in said mortgaged premises as purchasers, mortgagees, judgment creditors, or otherwise, which liens, if any, have accrued subsequent to the lien of appellants' mortgage and are subject in every respect to the lien thereof. Thompson & Root answered asserting a prior lien. Said second amended bill prayed a sale of the real estate to satisfy the amount due appellants, and " that upon said sale being made the money arising therefrom shall be brought into this court to be distributed among the parties hereto as shall be according to law." Having prayed a sale of the real estate without asking that such sale be subject to prior liens, appellant can not complain that the court sold the land as asked. Thompson & Root were parties to said bill, and therefore the prayer that the moneys arising from said sale " be distributed among the parties hereto as shall be according to law," included Thompson & Root. It was according to law that the liens on said premises should be paid in the order of their priority out of the proceeds of the sale thereof, and the decree was strictly in accordance

with and supported by the prayer of the second amended bill. If the prayer of the bill had not been as above set out, the action of the court is sustained by Dillman v. Will County National Bank, 36 Ill. App. 272, and 138 Ill. 282. The very object of making the owners of this prior judgment defendants to the bill was to litigate and settle, and if possible defeat, their claim to priority. The court decided the case presented, and having the parties before it, properly granted complete relief and disposed of the entire controversy.

Appellees argue that the evidence shows appellants' mortgage was executed without authority and is void. Appellees did not assign cross-errors, and therefore that question is not before us. Finding no error in the record in the respects argued by appellants, the decree of the court below will be affirmed.